**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DARKPULSE, INC.,

　　　　　　　　　　*Plaintiff,*

　　　v.

FIRSTFIRE GLOBAL OPPORTUNITIES
FUND, LLC, and ELI FIREMAN,

　　　　　　　　　　*Defendants.*

Civil Action No. 1:21-cv-11222-ER

**PLAINTIFF DARKPULSE, INC.'S MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND  PRELIMINARY INJUNCTION**

**THE BASILE LAW FIRM, P.C.**
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.:　(516) 455-1500
Fax:　(631) 498-0748
Email: gus@thebasilelawfirm.com
　　　 eric@thebasilelawfirm.com

*Attorneys for Plaintiff DarkPulse, Inc*

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................... 2

BACKGROUND ....................................................................................................................... 4

ARGUMENT ............................................................................................................................. 6

   I.    THE PRELIMINARY INJUNCTION STANDARD ........................................................ 6

     A.   DARKPULSE IS LIKELY TO SUCCEED ON THE MERITS BECAUSE FIRSTFIRE
HAS A STATUTORY RIGHT TO RESCIND THE UNLAWFUL AGREEMENTS ........... 6

          1. The Convertible Notes Were Made in Violation of § 15(a) of the Act Because
FirstFire is an Unregistered Dealer, Who May Not Lawfully Effect Any
Transaction in Securities………………………………………………………..……7

          2.  Because FirstFire is an Unregistered Dealer, It Could Not Lawfully Make or
Perform the Agreements, Which Are Voidable by DarkPulse………………..…12

          3.    FirstFire Is an Unregistered Dealer that Could Not Lawfully Effect the
Securities Transactions in this Case and its Performance Under those
Transactions Was Unlawful…………………………………………...………………13

     B.   DARKPULSE WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION
BECAUSE THE REMEDY UNDER § 29(b) DOES NOT INCLUDE DAMAGES ........... 14

          1.   DarkPulse Will Be Irreparably Harmed if FirsFire is Permitted to Sell Such a
Large Block of Stock Into the Market…………………………………...……………15

          2.   Because Damages Are Not Available Under § 29(b), the
Damages Incurred are By Definition Irreparable………………………..…………16

     D.   AN INJUNCTION WOULD SERVE THE PUBLIC INTERESTS THAT THE ACT
IS INTENDED TO PROTECT ........................................................................................... 17

CONCLUSION......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. H&H Wholesale Servs., Inc.*,
  670 Fed. Appx. 6 (2d Cir. 2016) ................................................ 6

*Auctus Fund, LLC, v. Players Network, Inc.*,
  20-cv-10766 (D. Mass. Dec. 10, 2021) ....................................... 8

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ..................................................... 14

*Candelaria v. Baker*,
  2006 WL 618576 (W.D.N.Y. 2006) .......................................... 16

*Eastside Church of Christ v. National Plan, Inc.*,
  391 F.2d 357 (5th Cir. 1968) ........................................... 7, 8, 15

*Edgepoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*,
  6 F.4th 50 (1st Cir. 2021) ............................................... 7, 15

*EMA Fin., LLC v. Vystar Corp.*,
  2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) ............................. 15

*Franklin Fed'l. Savings Bank v. United States*,
  60 Fed Cl. 55, 72 (2004) .......................................................... 17

*Lawrence v. The Richman Group Capital Corp.*,
  358 F. Supp. 2d 29 (D. Conn. 2005) ............................................ 3

*LG Capital Funding, LLC v. ExeLED Holdings, Inc.*,
  2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018) ............................. 15

*Mass. Fin. Servs., Inc. v. Securities Investor Prot. Corp.*,
  411 F. Supp. 411 (D. Mass. 1976) ............................................ 12

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) .................................................................. 7

*Moody v. Bache & Co.*,
  570 F.2d 523 (5th Cir. 1978) .................................................... 18

*Nechis v. Oxford Health Plans, Inc.*,
   421 F.3d 96 (2d Cir. 2005)................................................................................. 16

*Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*,
   678 F.2d 552 (5th Cir. 1982) ............................................................................ 7

*Roth v. Securities & Exchange Comm'n*,
   22 F.3d 1108 (D.C. Cir. 1994). ......................................................................... 3

*Royal Air Properties, Inc. v. Smith*,
   312 F.2d 210 (9th Cir. 1962) ............................................................................ 7

*SEC v. Almagarby,*
   479 F. Supp. 3d 1266 (S.D. Fla. 2020) ................................................ 10, 12, 13

*SEC v. Big Apple Consulting USA, Inc.*,
   783 F.3d 786 (11th Cir. 2015) ........................................................ 10, 11, 12, 13

*SEC v. Fierro,*
   2020 WL 7481773 (D.N.J. Dec. 18, 2020)................................................ 10, 12

*SEC v. Fife,*
   2021 WL 5998525 (N.D. Ill. Dec. 20, 2021)............................................. 11, 12

*SEC v. Gibraltar Glob. Sec., Inc.*,
   2016 WL 153090 (S.D.N.Y. Jan. 12, 2016) ..................................................... 9

*SEC v. GPL Ventures, LLC,*
   No. 21-cv-06814 ............................................................................................. 10

*SEC v. Keener,*
   2020 WL 4736205 (S.D. Fla. Aug. 14, 2020)........................................ 10, 12, 13

*SEC v. Kenton Capital, Ltd.*,
   69 F. Supp. 2d 1, 12-13 (D.D.C. 1998)........................................................... 12

*SEC v. Management Dynamics, Inc.*,
   515 F.2d 801 (2d Cir. 1975)............................................................................ 19

*SEC v. River N. Equity LLC,*
   415 F. Supp. 3d 853 (N.D. Ill. 2019) ....................................................... 10, 13

*Sharma v. Skaruup Ship Mngt. Corp.*,
   916 F.2d 820 (2d. Cir. 1990)........................................................................... 19

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*,
  964 F. Supp. 783 (S.D.N.Y. 1997) ...................................................................... 17

*Transamerica Mortgage Advisors v. Lewis*,
  444 U.S. 11 (1979).............................................................................................. 18

*Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*,
  101 F.3d 259 (2d Cir. 1996)................................................................................ 17

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
  339 F.3d 101 (2d Cir. 2003)................................................................................ 16


**Statutes**

15 U.S.C. § 78c(18) ........................................................................................................ 3

15 U.S.C. § 78c(5)(A) ..................................................................................................... 9

15 U.S.C. § 78c(a)(10) .................................................................................................... 8

15 U.S.C. § 78cc(b) .................................................................................................. 6, 13

15 U.S.C. § 78o(1) ................................................................................................. 2, 8, 11


**Other Authorities**

Gruenbaum & Steinberg, *Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy
  Awakened*, 48 Geo.Wash.L.Rev. 1 (1979) ........................................................ 7, 16

Testimony of Arthur Levitt, Before the Subcommittee on Commerce, Justice, State and Judiciary
  of the Senate Committee on Appropriations, 1998 WL 169924 (March 19, 1998).................... 3

**Rules**

FINRA Rules 5110(b)(4)(B), 5110(c)(2)(A). .............................................................. 3

**Regulations**

*Registration Requirements for Foreign Broker-Dealers*, SEC Release No. 34-27017, 54 Fed.
  Reg. 30013, 30015 (July 18, 1989) ................................................................... 10

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff DarkPulse, Inc. ("DarkPulse" or "Plaintiff"), submits this Memorandum of Law in Support of its Motion for Temporary Restraining Order and Preliminary Injunction.

## SUMMARY OF THE ARGUMENT

On November 15, 2020, Defendant FirstFire Global Opportunities Fund, LLC, ("FirstFire" or "Defendant") used an unlawful securities contract to obtain 177,275,000 shares of DarkPulse stock directly from DarkPulse's transfer agent.  That block of stock has an estimated fair market value of $23,660,000.  As set forth in its Complaint, Plaintiff ultimately seeks rescission of the unlawful contracts[1] based on the statutory right provided under § 29(b) of the Securities Exchange Act of 1934 ("Act") (codified at 15 U.S.C. § 78cc).

In order to maintain the status quo, however, Plaintiff DarkPulse now seeks an order enjoining FirstFire and its controlling person Eli Fireman ("Fireman") (collectively "Defendants") from selling the wrongfully-obtained stock.  Because DarkPulse is a small company, the sale of such an enormous number of shares into the market would cause Plaintiff massive and irreparable harm.   Although preliminary injunctive relief is an extraordinary remedy, the necessary factors for granting relief are present in this case.

*First*, DarkPulse is likely to succeed on the merits.  FirstFire is not just a predatory lender, it is a predatory lender that operates as an *unregistered securities dealer* to effect its loans, whose conduct in the securities market is nearly identical to entities currently under prosecution by the Securities and Exchange Commission ("SEC").  As an unregistered dealer, FirsFire was prohibited by federal law from effecting *any transaction in securities*, including the contracts in this case,

---

[1]    As noted in the Complaint, Plaintiff seeks rescission of two unlawful securities contracts.  However, because FirstFire already sold the stock obtained from the first contract, the need for injunction does not pertain to that contract.

which are all securities contracts.  FirstFire violated the law when it obtained the stock, and it should not be allowed to commit further legal violations by selling it.

*Second*, DarkPulse faces massive, irreparable harm in the absence of an order prohibiting the sale of the stock.  If FirstFire is permitted to sell ***177,275,000*** newly-issued shares of DarkPulse stock into the open market, the shareholders will be diluted, the stock price will plummet, and the company's market capitalization will be severely damaged.  This harm is irreparable because the remedy available to Darkpulse *does not allow for damages*:  *rescission* of the securities contracts under § 29(b).  Such rescission is an equitable remedy designed to put the parties into their ***pre***-contractual position, not to compensate for the damage that will surely result from dumping over 177 million shares into the open market.

*Third,* the balance of hardships favors DarkPulse.  The potential harm to FirstFire from a restraint on sales of a single stock is purely economic (and readily ascertainable), but the harm to DarkPulse in the absence of injunctive relief potentially destabilizes the entire company.

*Fourth*, the public interest favors granting the relief for the simple reason that a party that violates federal securities laws should not be permitted to gain from its unlawful conduct while—at the same time—further injuring its victim.  The public policies underpinning these laws would be rendered meaningless if FirstFire were allowed to go unrestrained.

## PRELIMINARY STATEMENT

Persons who, as a regular business, buy and sell securities for their own account are considered  securities dealers who must comply with the registration requirement of the Act.  *See* 15 U.S.C. § 78o(1).  It is unlawful for an unregistered securities dealer to effect transactions in securities.

The broker-dealer registration requirement is regarded as the "keystone of the entire system of broker dealer regulation." *Roth v. Securities & Exchange Comm'n*, 22 F.3d 1108, 1109 (D.C. Cir. 1994). *See also Lawrence v. The Richman Group Capital Corp.*, 358 F. Supp. 2d 29 (D. Conn. 2005) ("registration is more than a formality[;]" it "not only requires the registration to adhere to certain record keeping requirements and [subjects the dealer] to SEC discipline and inspections," it "also requires the registrant to exercise control over associated persons in effecting securities transactions (*see* 15 U.S.C. § 78c(18)).").

Registration facilitates regulatory oversight of dealers by the SEC and obligates dealers to comply with ethics rules, reporting requirements, and even profit limitations.[2]  These legal requirements also protect small stock issuers like DarkPulse from unscrupulous and unqualified agents that act as securities dealers.[3]  The registration requirement is of heightened importance where, as in this case, "the securities are those of relatively obscure and unseasoned companies," *i.e.*, microcap securities traded on the OTC Markets.[4]

At no time relevant hereto has FirstFire or Fireman been registered as dealers with the SEC. *See* Complaint (filed 12/31/2021, ECF 1) at ¶¶ 15, 18.  Defendants remain unregistered even now despite substantial evidence that they are dealers, *see id., i.e.* that they are in the regular business of buying and selling securities for their own account, including evidence of Defendants' own

---

[2]    *See, e.g.,* FINRA Rules 5110(b)(4)(B), 5110(c)(2)(A).

[3]    *See* Testimony of Arthur Levitt, Before the Subcommittee on Commerce, Justice, State and Judiciary of the Senate Committee on Appropriations, 1998 WL 169924 (March 19, 1998) (SEC Chairman Arthur Levitt explaining that the microcap "market shows signs of an increase in abuses in the market for low-priced stocks or 'microcap' stocks… *This part of the market provides legitimate opportunities for small and new businesses to raise capital, but also provides opportunity for criminals to prey on innocent investors…*") (emphasis added).

[4]    *See* Securities and Exchange Commission Release Note, *Distribution by Broker-Dealers of Unregistered Securities*, Release No. 4445, 1962 WL 69442, at *1 (Feb. 2, 1962).

statements[5] and evidence that they have engaged in over 200 similar securities transactions with nearly 90 different issuers.[6]

While continuing to evade SEC oversight, Defendants have already converted approximately $1.5 million in DarkPulse debt—purchased via two convertible promissory notes (which are securities)—into more than one billion newly-issued shares of DarkPulse common stock (with each conversion also being a separate transaction in securities). Defendants have engaged in such conduct at the expense of DarkPulse and its legitimate investors, who have been severely diluted by Defendants' practices.

The relief requested should be granted.

## BACKGROUND

DarkPulse is a "microcap" company—a small, publicly-held corporation that trades on the over-the-counter ("OTC") market, where the stocks of early-stage, developing companies that are too small for the major exchanges are traded. *See* ECF 1 at ¶ 12. FirstFire is a predatory lender whose business model is to utilize convertible notes (a type of security) to obtain microcap issuer[7] common stock at a steep discount, which it then promptly dumps back into the market *en masse*, to reap profits—without any concern for the downward plunge of the stock price this inevitably causes or the damage it does to the company. *See* ECF 1 at ¶ 1.

**Securities Transaction: FirstFire Purchases the April 2021 Convertible Note.**

The events in this case are just another day in FirstFire's unlawful lending business. On April 26, 2021, FirstFire purchased from DarkPulse a convertible promissory note, a type of debt

---

[5]   *See* ECF No. 1-1, at 25-26 (Investment Purpose) ("Buyer is purchasing the Note and the shares of Common Stock ... for its own account....") (emphasis added); ECF No. 1-2, at 23 (same).
[6]   *See* ECF No. 1-3 (EDGAR Transaction List) (showing that, since 2015, FirstFire has effected over 200 securities transactions via convertible notes with at least 89 microcap issuers in addition to DarkPulse) ("EDGAR List").
[7]   "Issuer" means a publicly-traded company that issues stock.

security that gives FirstFire the option to exchange the debt for company stock at a deep discount. ("April 2021 Note").  *See* ECF 1 at P 1-2.  FirstFire paid DarkPulse $750,000 for April 2021 Note, for which DarkPulse was obligated to repay $825,000, plus 10% interest, in nine months.  *See* ECF 1 at ¶ 31.  The April 2021 Note also: (1) imposed a fixed conversion price ($0.015 per share), but provided that such "fixed" price could be reduced to $0.005 per share upon the occurrence of any incident of default; and (2) obligated DarkPulse to issue FirstFire 75,000,000 "commitment shares" upon execution.  *See* ECF 1 at ¶ 32.  The commitment shares had an estimated open market value of $1,425,000.  *See* ECF 1 at ¶ 36.  As stated in the Complaint, the April 2021 Note is unlawful because, inter alia, it was unlawful "as made" pursuant to § 29(b) of the Act because FirstFire, as an unregistered securities dealer, was not legally permitted to effectuate purchase of the Note to begin with.[8]

On November 15, 2021, FirstFire effected a conversion of the full amount under the April 2021 Note, acquiring thereby 177,275,000 shares of newly-issued stock, which carried an estimated open market value greater than $23,660,000 on the date of conversion.  *See* ECF 1 at ¶ 43.  Unfortunately, DarkPulse was unaware of the conversion request and the transfer agent conveyed the 177,275,000 shares of stock to FirstFire before DarkPulse could halt the transaction. DarkPulse now seeks to prevent FirstFire from dumping the wrongfully-obtained shares into the market, which has been FirstFire's demonstrated practice.

---

[8]    FirstFire previously purchased a convertible promissory note from DarkPulse. on September 20, 2018.  *See* ECF 1-1.  Under this prior note, FirstFire paid DarkPulse $225,000, and DarkPulse was obligated to repay $247,500, plus 8% interest, in merely nine months; the note also gave FirstFire the right to convert the all or any portion of the debt into DarkPulse stock at a 30% discount to prevailing market prices.  On June 7, 2019, FirstFire submitted its first conversion request, demanding the issuance of 7,000,000 shares of DarkPulse stock in exchange for $5,340 in debt. After submitting 17 additional conversions, under which FirstFire demanded and received over 850,000,000 shares of DarkPulse common stock (which had an aggregate open market value in excess of $10,000,000), the September 20, 2018 Note was fully satisfied.

## ARGUMENT

## I.   THE PRELIMINARY INJUNCTION STANDARD

Preliminary injunctive relief requires the movant to demonstrate: (i) the likelihood that the movant will succeed on the merits; (ii) the likelihood that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of hardships tips in the movant's favor; and (iv) whether the injunction is in the public's interest.  *See Abbott Labs. v. H&H Wholesale Servs., Inc.*, 670 Fed. Appx. 6, 8 (2d Cir. 2016).  These four factors are met in this case.

## II.   PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED

### A.   DARKPULSE IS LIKELY TO SUCCEED ON THE MERITS BECAUSE FIRSTFIRE HAS A STATUTORY RIGHT TO RESCIND THE UNLAWFUL AGREEMENTS

DarkPulse is likely to succeed on the merits because its claim for rescission is based on a statutory right.  Under § 29(b) of the Act, *any contract made in violation of the Act is void*.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386-88 (1970).

§ 29(b) provides, in relevant part:

> *Every* contract *made in violation of any provision of this chapter* or of any rule or regulation thereunder, and every contract … heretofore or hereafter made the *performance of which involves the violation* of, or the continuance or any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, *shall be void* (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract…

*Id.* (codified at 15 U.S.C. § 78cc(b)) (emphasis added).  The Supreme Court has held that private litigants are entitled to assert claims for relief under § 29(b), *see Mills*, 396 U.S. at 386-89, and numerous courts have recognized violations of § 15(a) for acting as an unregistered dealer to serve as the predicate violation and right to rescission thereunder.  *See, e.g., Edgepoint Capital Holdings, LLC v. Apothecare Pharmacy,* LLC, 6 F.4th 50 (1st Cir. 2021); *Reg'l Props., Inc. v. Fin. & Real*

*Estate Consulting Co.*, 678 F.2d 552, 557-58 (5th Cir. 1982) ("courts have uniformly either held or assumed that such suits can be brought," as § 29(b) provides a private cause of action); *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357 (5th Cir. 1968), *cert. denied*, 393 U.S. 913 (1968); *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210 (9th Cir. 1962); *Couldock & Bohan, Inc. v. Société Generale Sec. Corp.*, 93 F. Supp. 2d 220 (D. Conn. 2000); *Lawrence*, Case No. 3:03-cv-850 (JBA) (D. Conn. Aug. 03, 2007); *Auctus Fund, LLC, v. Players Network, Inc.*, 20-cv-10766 (D. Mass. Dec. 10, 2021); *see also* Gruenbaum & Steinberg, *Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy Awakened*, 48 Geo.Wash.L.Rev. 1 (1979) ("Viable Remedy").  To void a contract under § 29(b), the proponent must show that "(1) the contract involved a prohibited transaction; (2) he is in contractual privity with [the party relying on the contract]; and (3) [he] is in the class of persons that the securities acts were designed to protect." *Eastside Church*, 391 F.2d at 362.

As explained below, the contracts in this case were prohibited transactions because FirstFire violated the Act when it entered into the transactions as an unregistered dealer. (The second and third elements above (privity and class of protected persons) cannot reasonably be disputed.)[9]  *See* ECF 1 at ¶¶ 67-86.

### 1. The Convertible Notes Were Made in Violation of § 15(a) of the Act Because FirstFire is an Unregistered Dealer, Who May Not Lawfully Effect Any Transaction in Securities

The prohibited transaction in this case involves a violation of § 15(a), which provides:

> It shall be unlawful for any broker or dealer … (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or

---

[9]   Because DarkPulse is a party to the contract, privity is not an issue.  Further, it is well established that the issuer of the securities sought to be purchased by the unregistered dealer—in this case, DarkPulse—is "obviously a member" of the class of persons that the statute was designed to protect.  *See Regional Properties, Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982).

> attempt to induce the purchase or sale of, any security … unless such broker or dealer is registered in accordance with subsection (b) of this section.

*Id.* (codified at 15 U.S.C. § 78o(1)) (emphasis added).   Hence, under § 15(a), it is unlawful for (1) an unregistered (2) broker or dealer (3) to make use of the mails or any means or instrumentality of interstate commerce (4) to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security.  *See SEC v. Gibraltar Glob. Sec., Inc.*, 2016 WL 153090, at *2 (S.D.N.Y. Jan. 12, 2016) (citing 15 U.S.C. § 78o(a)(1)).

It cannot be disputed that FirstFire's purchase of the April 2021 Note[10] was a transaction in securities.  *See* ECF 1 at ¶ 32.  Securities are broadly defined in the Act,[11] which definition clearly includes the transactions here.  Further, it cannot be disputed that neither FirstFire nor Fireman are now, or were during any time relevant hereto, registered as a securities dealer under the Act.[12]  *See* ECF 1 at ¶¶ 15, 18.

Because § 15(a) provides that it would be unlawful for an unregistered securities dealer to effect a transaction in securities, no unregistered securities dealer could have lawfully effected the purchase of the April 2021 Note.

FirstFire made use of the mails, email, and other instrumentalities of interstate commerce to effectuate the securities transactions in this case.  *See* ECF 1 at ¶ 25.  FirstFire conducted inter-state conference calls, used email to negotiate the transactions, and used interstate wire transfers to transfer funds to and from its bank account.  *See* ECF 1 at ¶ 47.  Additionally, FirstFire sent the conversion notices from its headquarters in New York to DarkPulse's transfer agent, Standard Registrar and Transfer Company Inc., which is located in Utah.  *See* ECF 1 at ¶ 43.  Thus, the only

---

[10]   And the other Note that Plaintiff seeks to rescind in this case (*see* Complaint, ECF No. 1 at ¶¶ 20-30).

[11]   15 U.S.C. § 78c(a)(10) (defining "securities" as "any note, stock, treasury stock, security future, security-based swap, bond, debenture…").

[12]   *See* Company Information About Active Broker-Dealers (March 2007 - December 2021), SEC.gov, *available at* https://www.sec.gov/help/foiadocsbdfoiahtm.html (last accessed January 14, 2022).

question that remains is whether FirstFire qualifies as a securities dealer under the Act, *i.e.*, whether it was engaged in the business of buying and selling securities for its own account. *See* 15 U.S.C. § 78c(5)(A) (defining a "dealer").  The answer to this question is—undoubtedly—*yes*.

### a.     According to the SEC, FirstFire Operates as an Unregistered Securities Dealer

FirstFire uses a business model (and securities contract documents) nearly identical to that used by entities currently under prosecution by the SEC. *See* ECF 1 at ¶¶ 3-4.  The SEC has commenced several civil enforcement actions to close down similar toxic lenders for unlawfully operating as unregistered dealers, which, thus far, the courts have universally upheld.  (In this district, Judge Caproni (sitting in motion Part One) recently granted a TRO for an SEC case raising the same question, *see SEC v. GPL Ventures, LLC*, No. 21-cv-06814 (August 13, 2021 Order, ECF 11).  *See* ECF 1 at ¶ 5.  In these cases, the courts agreed that the lender-defendants were operating as unregistered dealers when using operations (and documents) nearly identical to that used by FirstFire.  *See, e.g., SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786 (11th Cir. 2015); *SEC v. Almagarby,* 479 F. Supp. 3d 1266 (S.D. Fla. 2020); *SEC v. Keener,* 2020 WL 4736205 (S.D. Fla. Aug. 14, 2020)*; SEC v. Fierro,* 2020 WL 7481773 (D.N.J. Dec. 18, 2020); *SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019); *SEC v. Fife,* 2021 WL 5998525 (N.D. Ill. Dec. 20, 2021).

### b.    The Sheer Volume of FirstFire's Transactions Shows That It Buys and Sells Securities *As A Regular Business*

Under the Act, a "dealer" is "any person engaged in the business of buying and selling securities … for such person's own account through a broker or otherwise." § 78c(5)(A)[13]. This definition was "drawn broadly by Congress to encompass a wide range of activities involving investors and securities markets," *Registration Requirements for Foreign Broker-Dealers*, SEC Release No. 34-27017, 54 Fed. Reg. 30013, 30015 (July 18, 1989).

In *SEC v. Big Apple Consultin*g, the 11th Circuit highlighted that the operative question in the "dealer" analysis was whether the person was "in the business" of buying and selling securities. In that case, the court found "business" was demonstrated in part by the sheer volume of transactions that the defendant engaged in, stating:

> To qualify as a "dealer," a person must be in the "business of" buying and selling securities. We think the centerpiece to this definition is the word "business," which is defined as "[a] commercial enterprise carried on for profit, a particular occupation or employment habitually engaged in for *livelihood or gain*." Central to this definition is *profit or gain*. While evidence of merely some profits from buying and selling securities may alone be inconclusive proof, the defendants' *entire* business model was predicated on the purchase and sale of securities. Big Apple and its subsidiaries depended on acquiring client stock and selling that stock to support operations and earn a profit.

*Big Apple*, 783 F.3d at 809-10. *See also Mass. Fin. Servs., Inc. v. Securities Investor Prot. Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976) (holding that "to be 'engaged in the business' connote[s] a certain regularity of participation in securities transactions at key points in the chain of distribution."); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12-13 (D.D.C. 1998) (finding that regular participation in securities transactions is the "primary indicia of being 'engaged in the business,'" and can be demonstrated by, *inter alia*, evidence that the subject person is selling, or

---

[13]    FirstFire states in its own documents that it "*is purchasing the Note a*nd the shares of Common Stock … *for its own account*…." ECF No. 1-1, at ¶¶ 25-26 (emphasis added); ECF No. 1-2, at ¶ 23 (same).

previously sold, the securities of other issuers, the number of securities transactions effectuated, the number of shares acquired and/or sold, or the dollar amount of such securities.).

In this case, an examination of the SEC's EDGAR database[14] and FirstFire's dealings with DarkPulse reveals a volume and regularity of participation in securities transactions rivalling that of the holders in *Almagarby*,[15] *Keener*,[16] *Fierro*,[17] and *Fife;*

- FirstFire has effectuated *no fewer than 203 securities transactions* with other microcap issuers;

- FirstFire has effectuated *more than 20 separate securities transactions* with DarkPulse;

- FirstFire has acquired (and, upon information and belief, sold) *at least 1,001,396,742 newly-issued securities* from  microcap issuers other than DarkPulse;

- FirstFire has acquired (and, upon information and belief, sold) more than 875,000,000 newly-issued shares of DarkPulse common stock; and

- FirstFire has acquired more than $30 million worth of open-market securities from DarkPulse, which it promptly sold for substantial profit.[18]

---

[14] *See generally* EDGAR List.

[15] *See SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla. 2020) (finding as a matter of law that defendants are unregistered dealers, who acted in violation of § 78o(1), when, during a 5-year period, defendants purchased no less than *57 aged debt securities (convertible notes)* for no less than $1,115,000 from other debtholders of at least *38 different issuers*, acquired through conversions approximately 8.5 billion securities, sold no less than 7.6 billion securities and obtained no less than $2.8 million in proceeds from selling the newly-issued, converted securities).

[16] *SEC v. Keener*, 2020 WL 4736205 (S.D. Fla. Aug. 13, 2020) (denying defendant's motion to dismiss SEC's complaint alleging defendant acted as an unregistered dealer in violation of § 78o(1) after rejecting defendant's claim that he was a "trader" and, therefore, exempt from registration, and finding that defendant's level of participation in buying and selling securities—which included buying and converting over 100 convertible notes from more than 100 microcap issuers during a 3-year period, selling approximately 17.5 billion shares of newly-issued stock obtained from the aforesaid notes and making a $21.5 million profit from the same—involved more than a few isolated transactions, akin to a dealer).

[17] *SEC v. Fierro*, 2020 WL 7481773 (D.N.J. Dec. 18, 2020) (defendants' motion to dismiss denied; finding it "more than plausible that [defendants] meet[] the statutory 'dealer' definition," when defendants, during a 2-year period, purchased and converted more than 50 convertible notes from more than *20 microcap issuers* and sold more almost 6.5 billion newly-issued shares of common stock into the market, generating approximately $2.3 million in profits).

[18] Indeed, when comparing prevailing market prices of DarkPulse common stocks to the conversion price on the date of each conversion, FirstFire stood to make *as much as $10,462,514* by promptly selling the newly-converted shares into the public markets (realized from the difference between the conversion price and prevailing market price).

**c.** **The Profit Mechanism Used by FirstFire Is Used By Dealers, Not Traders**

Like the entities found to be dealers in *River North*, *Big Apple*, *Almagarby*, and *Keener*, FirstFire is not a trader or an investor.  *See* ECF 1 at ¶ 1.  FirstFire reaped its enormous profits by acquiring large amounts of newly-issued stock at a substantial discount (like a dealer or underwriter), rather than purchasing stocks already in the marketplace, like a trader.  *See* ECF 1 at ¶ 29.  Using this mechanism, FirstFire turned a profit *not* from selling only after market prices increased (like a trader), but rather from quickly reselling the stock to reap the 'spread' between the discount and the market price.  *Id.*  Such activity is a hallmark of a dealer, not a trader.  *See River North*, 415 F. Supp. 3d at 859; *Big Apple Consulting*, 783 F.3d at 810; *Almagarby,* 2020 U.S. Dist. LEXIS 150289 at 14; *Keener* 2020 U.S. Dist. LEXIS 146256 at *12.  FirstFire cannot dispute that its multitude of securities contracts it has effected over the last several years all enabled it to obtain newly issued stock, directly from issuer-companies (including DarkPulse) at a substantial discount to the market price,[19] which it promptly sold into the market.  *See* ECF 1 at ¶¶ 55, 57, and 59.

---

[19]  For similar contracts with other issuers, *see* EDGAR List; DigitalTown, Inc., Form 10-Q, filed August 22, 2019, available at https://www.sec.gov/Archives/edgar/data/1065598/000164033419001724/dgtw_10q.htm (showing FirstFire converted debt purchased through a convertible note (a security) into, at least, 793,406,848 newly-issued shares of common stock at a conversion price equal to the lower of $0.20 per share or 75% of the lowest closing market price from the 10 trading days preceding a conversion) (last accessed January 14, 2022); Applied Minerals, Inc., Form 8-K, filed February 28, 2020, *available at* https://www.sec.gov/Archives/edgar/data/8328/000157587220000045/app016_8k.htm (showing FirstFire converted debt purchased through a convertible note (a security) into, at least, 8,300,000 newly-issued shares of common stock at a conversion price equal to the lower of $0.02 per share or 75% of the lowest closing market price from the 20 trading days preceding a conversion) (last accessed January 14, 2022); Visium Technologies, Inc., Form 8-K, filed January 10, 2019, at Exhibit 10.2, *available at* https://www.sec.gov/Archives/edgar/data/1082733/00014931521_9000437/ex10-2.htm (showing FirstFire converted debt purchased through a convertible note (a security) into, at least, 49,000,000 newly-issued shares of common stock at a conversion price equal to the lower of $0.15 per share or 65% of the lowest closing market price from the 10 trading days preceding a conversion) (last accessed January 14, 2022).  *See also generally* EDGAR List.

> **2.     Because FirstFire is an Unregistered Dealer, It Could Not Lawfully Make or Perform the Agreements, Which Are Voidable by DarkPulse**

The overwhelming volume of FirstFire's buying and selling of securities, the stated fact that the purchases were for its own account, its profits based upon (1) purchase of convertible securities from small issuers (2) acquisition of newly-issued stock directly from issuers, at a substantial discount to the market price; (3) the prompt sale of that stock into the market, as well as the large volume sales all lead to the inevitable conclusion that FirstFire operated as a securities dealer that was required to registered with the SEC.   *See* ECF 1 at ¶ 59.

> **3.     FirstFire Is an Unregistered Dealer that Could Not Lawfully Effect the Securities Transactions in this Case and its Performance Under those Transactions Was Unlawful.**

The plain language of § 29(b) provides that a contract may be voided if either the *making* of the contract, or *performance* of the contract involved a violation of the Act.   *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) (involving allegations of both performance and "as made" violations).   In respect to alleged § 15(a) violations, most caselaw involves a brokerage contract for the services of an unlicensed broker-dealer; since a brokerage contract is not itself a security, the analysis focuses only on performance. *See e.g. Reg'l Props.*, 752 F.2d 178.

However, the threshold question in any securities litigation must be whether the instrument at issue is a security.   Here, the analysis under § 15(a)  necessarily changes if the contract *itself* is a transaction in securities made by an unlicensed dealer.[20]   *See* 15 U.S.C. § 78cc(b).  Because the

---

[20]     The decisions in *EMA Fin., LLC v. Vystar Corp.*, 2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) and *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018) reached an incorrect result because the analysis was based on broker cases.  In each of these cases, the defendants claimed a right to  rescission under § 29(b), based on the lender's status as an unregistered dealer (in violation of §15(a)) of the Act.  However, the *Vystar* and *ExeLED* defendants (inexplicably) argued only that the securities contracts were unlawful because they could not lawfully be *performed* by an unlicensed securities dealer. The courts rejected this argument on the ground that the unlicensed dealer *was not required* to effect a transaction in securities to obtain repayment under the contract— the lender could theoretically forgo the extra profits and take repayment in cash, which would not violate § 15(a). What both courts failed to recognize—and the parties apparently failed to argue—is that *the contracts were themselves securitie*s, and it was unlawful for the unregistered dealer to be a party to that contract to begin with.  Regardless of

Notes in this case are, in and of themselves, securities, an unregistered securities dealer could not lawfully effect the transaction to purchase them in the first place. *Compare* Notes, *with* §§ 78c(a)(10), 78cc(b).

Notwithstanding that FirstFire could not have lawfully effected the purchase of the Notes, the recent holding of *Edgepoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50 (1st Cir. 2021) distinguishes "as performed" cases where the contract *has, in fact, been performed unlawfully*. In *Edgepoint Capital*, the First Circuit held that a contract met the "as performed" prong of § 29(b) if it was *in fact* performed in violation of the Act, even if the contract, in theory, permitted lawful performance. Under *Edgepoint Capital*, the Notes in this case would be unlawful "as performed" in addition to "as made," because FirstFire did, in fact effect multiple securities transactions pursuant to the Notes when it converted debt into stock and sold the stock. *See* Complaint at ¶¶ 24-28, 42-43. *See* ECF 1 at ¶¶ 67-86.

**B.   DARKPULSE WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION BECAUSE THE REMEDY UNDER § 29(b) DOES NOT INCLUDE DAMAGES**

"The purpose of issuing a preliminary injunction is to preserve the *status quo* and prevent irreparable harm until the court has an opportunity to rule on the … merits." *Candelaria v. Baker*, 2006 WL 618576, at *3 (W.D.N.Y. 2006). "[I]njunctive relief is generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005). As for irreparable harm, the Second Circuit has held that "harm shown to be non-compensable in terms of money damages

---

whether the contract further obligated unlawful performance, an unregistered dealer's transaction in securities is unlawful when made. *See Eastside Church of Christ v. National Plan Inc.*, 391 F.2d 357, 362 (5th Cir. 1968) (finding security transaction unlawful "as made" when effected by an unregistered dealer and voiding the transaction).

provides the basis for awarding injunctive relief." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113-14 (2d Cir. 2003).

### 1.    DarkPulse Will Be Irreparably Harmed if FirsFire is Permitted to Sell Such a Large Block of Stock Into the Market

The collateral damage caused by conversion is well recognized:  any issuance of shares causes irreversible shareholder dilution.  When newly-issued stock is sold into the market — as FirstFire consistently does under its well-established, *unlawful* business model— the existing stockholders are "diluted," usually severely so. *See* ECF 1 at ¶ 45.  That is, the value held by each individual stockholder is diminished, a diminution that goes on in perpetuity and *cannot be undone*.  Stockholder dilution is a compensable form of damages. *See Franklin Fed'l. Savings Bank v. United States*, 60 Fed Cl. 55, 72 (2004).

But the harm does not stop there. The drastic dilution that would result from dumping such a large number of shares into the market predictably creates a "firesale" effect that pushes the stock price even lower and creates reputational damage. Indeed, while a court could, theoretically, award an issuer with damages to repurchase the securities that were wrongfully issued and sold back into the marketplace, the true damages spread far beyond that—loss of investor confidence, loss in market capitalization, severe depreciation in trading price, etc.—and cannot be fully ascertained or remedied by monetary damages.[21]

FirstFire's dumping of 177,375,000 shares into the market will depress DarkPulse's trading price and make it more difficult to raise money.  The drop in stock price that would accompany FirstFire's liquidation of 177,375,000 shares into the market is essentially guaranteed.  Causing a drop in stock price is referred to as "market damages." *Strougo ex rel. Brazil Fund v. Scudder,*

---

[21]    The foregoing is further supported by the purpose of a preliminary injunction: to preserve "the court's power to render a meaningful decision after a trial on the merits," not to provide the movant with ultimate relief. *Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996).

*Stevens & Clark, Inc.*, 964 F. Supp. 783, 802-03 (S.D.N.Y. 1997).  Accordingly, DarkPulse would be irreparably harmed if FirstFire is not restrained as requested herein.

> **2.      Because Damages Are Not Available Under § 29(b), the Damages Incurred are By Definition Irreparable.**

Section 29(b) provides for the equitable remedy of rescission, not money damages. Although there are few cases on this question, those cases (as well as one significant commentator) have concluded that *compensatory money damages*, such as damages from dilution or market damages, *are not available* under § 29(b).   *See Moody v. Bache & Co.*, 570 F.2d 523 at n.6 (5th Cir. 1978).

This conclusion stems from the Supreme Court's opinion in *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11 (1979), where the court analyzed § 215 of Investment Advisors Act, a provision nearly identical to § 29(b).  In that case, the Court concluded that  the limited right to rescission under the  § 215 *does not include* compensation for any damages alleged to have resulted from the unlawful conduct.   The Court reasoned that "[s]uch relief could provide by indirection the equivalent of a private damages remedy" that Congress did not confer in the statute. *Transamerica*, 444 U.S. at 24, n.14.   Subsequent to *Transamerica*, courts that had previously awarded damages under § 29(b) concluded that only recission, not money damages was the remedy provided in that section.    As one noted commentator opined,

> The Court's analysis of Section 215 of the Advisers Act strongly suggests that the right to relief created by that section is limited to equitable relief. Consequently, based on a strict reading of *Lewis* and despite language in *Mills* to the contrary, the right created by Section 29(b) arguably should be similarly limited.

Gruenbaum & Steinberg, *Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy Awakened*, 48 Geo.Wash.L.Rev. 1, 44 (1979).

For the foregoing reasons, the inevitable sale of DarkPulse's stock by FirstFire will cause massive damage to DarkPulse—harm that cannot be compensated in the future—if FirstFire is not preliminarily enjoined.

### C.    THE BALANCE OF HARDSHIPS FAVORS DARKPULSE

FirstFire will not suffer irreparable harm if it is enjoined from selling the recently issued conversion shares of DarkPulse common stock during the pendency of this case.  FirstFire's interests in the case are purely monetary, by definition remediable through damages.  If the Court decided in FirstFire's favor, FirstFire's damages would be solely monetary in nature and easily calculable.  *See, e.g., Sharma v. Skaruup Ship Mngt. Corp.*, 916 F.2d 820, 826 (2d. Cir. 1990).

### D.    AN INJUNCTION WOULD SERVE THE PUBLIC INTERESTS THAT THE ACT IS INTENDED TO PROTECT

As noted above, the registration requirement set forth in § 15(a) of the Act is designed to protect stock issuers, the market, and the general public from the damage caused by unscrupulous or unqualified agents acting as dealers.  The SEC is charged with safeguarding the public interest by enforcing the statutory requirements set forth in the Act.  Moreover, the public interest is in mind when registration with the SEC requires a dealer to provide important information to the SEC about its business—some of which is made public—including but not limited to the names of the direct and indirect owners and executive officers of the business, certain arrangements with other persons or entities, the identities of those who control the business, the states in which the dealer does business, past criminal or regulatory actions of the dealer or any affiliate that controls the business. *See generally SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975).

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court enjoin, pending a merits decision on this case, FirstFire, Fireman and their respective brokers, agents, servants, employees, attorneys, and affiliates, from selling, transferring, assigning, encumbering, or otherwise disposing of any DarkPulse common stock or any proceeds that were derived from that sale of any Darkpulse common stock.

DATED: January 17, 2022     Respectfully submitted,

            */s /   Gustave P. Passanante*
            Gustave P. Passanante, Esq.
            Eric J. Benzenberg, Esq.
            **THE BASILE LAW FIRM, P.C.**
            390 N. Broadway, Ste. 140
            Jericho, NY 11753
            Tel.: (516) 455-1500
            Fax: (631) 498-0748
            Email: gus@thebasilelawfirm.com
                eric@thebasilelawfirm.com

            *Attorneys for Plaintiff Darkpulse, Inc.*