UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARKPULSE, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC and ELI FIREMAN<br><br>        Defendants. | Index No. 1:21-cv-11222 (ER) |

**DECLARATION OF ELI FIREMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Eli Fireman, hereby declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Managing Member of FirstFire Global Opportunities Fund, LLC ("FirstFire"), a defendant in the above-captioned action, and am authorized to make this declaration on behalf of FirstFire. I am also personally named as a defendant in this action. I submit this Declaration in support of Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction. I make this Declaration based upon my own personal knowledge.

2. FirstFire is an investment fund focusing on small to medium-sized public and private companies, with expertise in distressed, special situations, and event-driven investing. Occasionally, FirstFire provides equity for highly distressed companies.

3. FirstFire has only ever sold securities on its own behalf and has never acted as an underwriter for an offering of securities.

A.   **DPLS Convertible Promissory Notes**

4.   On September 20, 2018, DarkPulse, Inc. ("DPLS") issued a convertible note to FirstFire (the "September 2018 Note"). The September 2018 Note was converted by FirstFire on multiple occasions in 2019, 2020, and 2021, for a total of 879,400,000 DPLS common shares converted.

5.   On April 26, 2021, DPLS issued a second convertible note to FirstFire (the "Note") in exchange for FirstFire agreeing to provide DPLS with $750,000 in cash. In connection with entering the Note, a true and correct copy of which is attached hereto as **Exhibit A**, DPLS and FirstFire also entered into a Securities Purchase Agreement (the "SPA"), a true and correct copy of which is attached hereto as **Exhibit B**, and a Registration Rights Agreement. The Note obligates DPLS to repay the principal sum of $825,000 and interest at the rate of 10% per annum. (**Exhibit A**, Note at 1.)

6.   Under Section 3.e of the SPA, DPLS represents and warrants to FirstFire that "so long as any amount on the Note remains outstanding, the Company shall not to any person, institution, governmental or other entity, state, claim, allege, or in any way assert, that [FirstFire] is currently, or ever has been a broker-dealer under the Securities Exchange Act of 1934."

7.   Section 1.1 of the Note provides for a conversion right. Should FirstFire choose to forgo a cash repayment of the Note, FirstFire may instead convert any outstanding amounts owed under the Note (including principal and interest) to shares of DPLS common stock at a specified Conversion Price. Section 1.4(a) of the Note provides that "[t]his Note may be converted by the Holder in whole or in part, on any Trading Day, while any amounts are outstanding hereunder, by submitting to the Borrower or Borrower's transfer agent a Notice of Conversion."

8. Section 1.2(a) of the Note provides for a per share conversion price into which the outstanding principal amount and interest under the Note may be converted into shares of DPLS common stock. The Fixed Conversion Price is $0.015 per share. If an Event of Default occurs, the Default Fixed Conversion Price at a rate of $0.005 per share is applicable.

9. If an Event of Default occurs, Section 3.22 of the Note provides for a Default penalty for the duration of the Event of Default, whereby the Note shall be payable in an amount equal to the Principal Amount then outstanding plus accrued interest (including any Default Interest) multiplied by 125%. If an Event of Default occurs, FirstFire is also entitled to "all costs, including, without limitation, legal fees and expenses, of collection." To date, FirstFire has not converted that part of the Note that includes the Default penalty (the additional 25% of the Principal Amount to which FirstFire is entitled, including any Default Interest).

10. The Note has a fixed conversion price, not a variable conversion rate with a discount from the market price at the time of conversion. The Note therefore indisputably is subject to market risk (of the price of the stock declining). The Fixed Conversion Price set by the Note is different from almost all of the other convertible notes entered into by DPLS, including the September 2018 Note with FirstFire, as those notes all provided a variable conversion rate—typically set as a calculation providing for a discount (30% or 35%) from the market price at the time of conversion.

11. Article III of the Note specifies Events of Default. For example, Section 3.21 provides that an Event of Default will occur "[i]f the Borrower fails to meet its obligations under the Registration Rights Agreement entered into by the parties in connection herewith."

**B.     DPLS's Defaults Under the Note**

12. One of DPLS's obligations under the Registration Rights Agreement (under Section 2(b)) is to use commercially reasonable efforts to file a registration statement covering the resale of the shares of DPLS common stock issued or issuable to FirstFire pursuant to the SPA and with respect to the Note and any conversion thereof (the "Registrable Shares"), within ninety (90) days following the funding of the Note.

13. Since the Note was funded on April 30, 2021, the deadline for DPLS to file a registration statement for the Registrable Shares related to the Note was July 29, 2021.

14. However, DPLS failed to file a registration statement with respect to the Registrable Shares by this deadline, and still has not to this day.

15. DPLS's allegation in the Complaint that "the registration statement appears to have been filed" is plainly false.

16. Accordingly, DPLS's failure to meet its obligations under the Registration Rights Agreement triggered an Event of Default under Section 3.21 of the Note.

17. Section 3.16 of the Note provides that an Event of Default will occur if DPLS issues common shares pursuant to an equity line of credit or otherwise in connection with a Variable Rate Transaction entered into after the date of the Note.

18. On August 19, 2021, DPLS entered into a purchase agreement (the "August GHS Agreement") with GHS Investments, LLC ("GHS"), granting DPLS the right to sell to GHS up to $45,000,000 of shares of DPLS common stock at variable rates from time to time at DPLS's discretion.

19. On November 9, 2021, DPLS entered into a second purchase agreement (the "November GHS Agreement" and, together with the August GHS Agreement, the "GHS

Agreements") with GHS, granting DPLS the right to sell to GHS up to an additional $30,000,000 of shares of DPLS common stock at variable rates from time to time at DPLS's discretion.

20. According to DPLS's publicly available SEC filings, DPLS issued shares of DPLS common stock to GHS pursuant to the August GHS Agreement on at least five closings between August 19, 2021 and October 14, 2021. The GHS Agreements are equity lines of credit and Variable Rate Transactions under the Note.

21. Accordingly, the issuance of shares of DPLS common stock pursuant to the GHS Agreements triggered an Event of Default under Section 3.16 of the Note.

C.   **The Amendment to the Note**

22. On or about November 4, 2021, I met with DPLS's CEO Dennis O'Leary in Arizona to discuss an amendment to the Note, a copy of which I had previously sent to Mr. O'Leary, that would, among other things, change the choice of law provision in the Note from New York law to Delaware law and change the exclusive forum provision from New York courts (state or federal) to Delaware courts (state or federal) (the "Amendment"). During our meeting, Mr. O'Leary informed me that his attorney Brian Higley had reviewed the Amendment with him. Mr. O'Leary executed the Amendment on behalf of DPLS, and I emailed him a countersigned version of the Amendment on behalf of FirstFire later for his records. Attached hereto as **Exhibit C** is a true and correct copy of my November 5, 2021 email to Dennis O'Leary and the Amendment.

23. The Amendment is roughly a one-page document, with almost the entirety of the Amendment concerning the parties' agreement that the Transaction Documents "shall be governed and construed in accordance with the laws of the State of Delaware" and that "[a]ny action brought by either party . . . concerning [the Transaction Documents] shall be brought only in the state courts

of Delaware or in the federal courts located in the state of Delaware." (**Exhibit C**, Amendment ¶ 2.)

24. Contrary to the allegations in the Complaint, at no time did I try to conceal from Mr. O'Leary that the Amendment modified the Note's choice of law and exclusive forum provisions.

        **D.**        **November 2021 Conversion of the Note**

25. On November 15, 2021, in compliance with the Note, Nick Fireman, an officer of FirstFire, emailed Mr. O'Leary, at his darkpulse.com email account, the account listed for notices in the Note, which indicated that FirstFire elected to convert the $825,000 principal and $61,875 of interest outstanding on the Note into 177,375,000 shares of DPLS common stock, using the Default Fixed Conversion Price of $0.005 per share, based on the Events of Default that DPLS had triggered. Attached hereto as **Exhibit D** is a true and correct copy of the November 15, 2021 email from Nick Fireman to Dennis O'Leary and the Notice of Conversion.

26. On November 17, 2021, FirstFire submitted the same Notice of Conversion, along with a legal opinion from JDT Legal, PLLC and related materials, to the Transfer Agent, and the Transfer Agent confirmed the issuance of the shares of DPLS common stock later that same day.

27. At least by November 23, 2021, DPLS was aware that 177,375,000 DPLS common shares had been issued to FirstFire pursuant to this November 17 conversion. Attached hereto as **Exhibit E** is a true and correct copy of a November 23, 2021 email from Dennis O'Leary to me.

28. On November 29, 2021, FirstFire received an email from Mr. O'Leary requesting that FirstFire return the shares of DPLS common stock it received "over and above the original note amount" and stating that "no additional shares were/are owed per the note agreement." A

true and correct copy of the November 29, 2021 email from Dennis O'Leary to me is attached hereto as Exhibit F.

29.    Because DPLS had committed Events of Default under the Note, FirstFire is entitled to receive principal and interest at the additional 25% default penalty, and because the default amount is also subject to conversion, FirstFire is entitled to at least an additional 44,343,750 DarkPulse common shares (for a total of 221,718,750 common shares).

30.    Over the 40 trading days from November 18, 2021 to January 14, 2022, FirstFire sold a total of 85,509,808 DPLS common shares, representing a small percentage of the total volume of trading in DPLS common shares during this period.

31.    On January 14, 2022, the day that DPLS filed its injunction application, there was total trading volume of 95 million DPLS common shares, and FirstFire accounted for sales of approximately 3,134,808 million of those shares, contrary to Mr. O'Leary's incorrect statement in his affidavit that FirstFire traded over 56 million shares that day.

32.    All of FirstFire's trading has been in an effort to achieve the highest available price, since it is in FirstFire's best interest that DPLS's share price remains as high as possible. There is no basis for suggesting that FirstFire's trading has had any negative impact on DPLS's share price.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2022 in San Fernando, CA.

_____
Eli Fireman

Scanned with CamScanner