UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARKPULSE, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, and ELI FIREMAN, <br><br> *Defendants.* | Civil Action No. 1:21-cv-11222-ER |

**PLAINTIFF DARKPULSE, INC.'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**THE BASILE LAW FIRM, P.C.**
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.:  (516) 455-1500
Fax:   (631) 498-0748
Email: gus@thebasilelawfirm.com
         eric@thebasilelawfirm.com

***Attorneys for Plaintiff DarkPulse, Inc***

**PRELIMINARY STATEMENT**

This dispute is being heard in the correct forum. Although this case does not currently involve a claim for usury, the mere fact that the April 26, 2021 convertible promissory note ("Note") is criminally usurious under the laws of New York (the forum originally selected by the parties), renders the Note **void *ab initio*.**[1] *Adar Bays, LLC v. GeneSYS* ID, Inc. 2021 N.Y. LEXIS 2206, 2021 NY Slip Op 05616 (Oct. 14, 2021). Further, when a contract is void *ab initio,* the invalidity extends even to procedural matters in the contract like a forum selection clause. *DeSola Grp., Inc. v. Coors Brewing Co.,* 199 A.D.2d 141 , 141-42 , 605 N.Y.S.2d 83 (1st Dep't 1993). *See also Signature Fin. LLC v. Neighbors Global Holdings, LLC,* 281 F. Supp. 3d 438, 446 (S.D.N.Y. 2017). Accordingly, the bid by Defendant FirstFire Global Opportunities Fund, LLC ("FirstFire" or "Defendant") to save the transaction—by securing an amendment ***dated* the day *Adar Bays* was issued** and purporting to change the forum to Delaware—was a **nullity**.

DarkPulse is entitled to a preliminary injunction. Plaintiff is likely to succeed on the merits as there is significant evidence FirstFire is engaged in business as an unregistered securities dealer. There is **no remedy at law** for the violations of § 29(b) of the Act, no less an *inadequate* one. There is clear evidence of irreparable harm in that DarkPulse's common stock has experienced price erosion and the company has suffered reduced market capitalization due to FirstFire's *en masse* selling. And the remaining factors for a preliminary injunction are met.

Accordingly, for all the reasons stated herein, and those set forth in DarkPulse's opening papers, the requested preliminary injunction should be granted.

---

[1] Since the loan is void *ab initio* the fact that Plaintiff did not assert that the Note should be voided until filing its Complaint in this case is of no moment. *See* Defendant's Memorandum of Law in Opposition ("Opp.") at 1 n.2.

**ARGUMENT**

I.     **THIS DISPUTE IS PROPERLY BEFORE THIS COURT[2]**

One cannot amend that which, legally, does not exist. Here, the Note is criminally usurious on its face, and, therefore, void and unenforceable—*incapable of being amended for any purpose.* New York's usury laws provide that a corporation may interpose the defense of usury as described in § 190.40 in the penal code. *See* N.Y. G.O.L. § 5-521(3). The law provides that "[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate *exceeding twenty-five per centum per annum* or the equivalent rate for a longer or shorter period." N.Y. Penal Law § 190.40 (emphasis added). What must be considered "interest" for purposes of a usury analysis is further defined by New York statute. Pursuant to § 5-501, "interest shall include any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance." N.Y. G.O.L. § 5-501(2). Totalling all items considered "interest" under New York law, there is no question the Note violates the criminal usury statute and is void *ab initio*.

*First,* New York courts hold that an original issue discount ("OID") must be considered interest on the loan when the OID payment does not reimburse the lender for expenses. *See Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (holding that "when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate."); *Hammelburger v. Foursome Inn Corp.,* 76 A.D.2d 646, 648 (App. Div. 2d

---

[2] Plaintiff anticipates making a similar argument, among others to be determined on a full, dispositive motion briefing cycle in the Delaware action brought by FirstFire.

3

Dept.) (1980) (holding that a discount retained by the lender must be added to the interest rate). *See also Band Realty Co. v. N. Brewster, Inc.*, 335 N.E.2d 316, 319 (1975). Here, the Note required DarkPulse to pay an OID of $75,000.00, or 10% of the total amount loaned. As in *Hillair Capital*, the OID does not compensate for expenses because of other provisions in the Agreement. Section 8k of the share purchase agreement ("SPA") shows that DarkPulse was already obligated to compensate FirstFire for "legal fees and expenses incurred in connection with this Agreement," and hence the OID must be deemed interest. *Id.*

*Second,* New York courts hold that the value of securities given to a lender in consideration for a loan must be added to the interest-rate calculation. *See Sabella v. Scantek Med. Inc*., 2009 LEXIS 88170 (S.D.N.Y. Sept. 25, 2009) (lender's entitlement to common stock for making a loan renders the loan usurious if the value of the shares "cause the return on the loan to exceed 25%."). This is true even if the exact value of the stocks is not apparent on the face of the agreement (*e.g.* restricted securities). *See id.* The restricted securities given as up-front consideration in *Hillair Capital* were deemed to have value and included in the interest rate. *Hillair*, 963 F. Supp.2d at 340 (noting various IRS methods for valuation of restricted stock). *See also Am. E Grp. LLC v. LiveWire Ergo. Inc* 2020 U.S. Dist. LEXIS 14235 (S.D.N.Y. Jan. 28, 2020) (voiding convertible note as criminally usurious when stock value included); *Funding Group, Inc. v. Water Chef, Inc*., 852 N.Y.S. 2d 736 (Sup. Ct. N.Y. County, 2008).

It is evident on its face that the Note charges interest in excess of 25%. With stated interest (10%) and OID (annualized, approximately 14%) alone, the interest rate on the Note comes to at least 24%. When the value of the commitment shares is added (trading at $1.4 million at issuance), the most conservative estimate puts the interest rate at approximately **225%**.[3] Accordingly, the

---

[3] Courts applying New York law have held that ***usury-savings clauses (such as found in section 4.12 of the Note)*** do not save an otherwise usurious note. *See, e.g., Hammelburger v. Foursome Inn Corp*., 54 N.Y.2d 580, 595-598 (1981)

Note was and remains void *ab initio* and, therefore, the October 14, 2021 Amendment—purporting to change the selected forum from New York to Delaware—was ineffective. This dispute, therefore, is properly before this Court.

## II.   DARKPULSE MEETS THE FACTORS FOR A PRELIMINARY INJUNCTION

### A   DARKPULSE IS LIKELY TO SUCCEED ON THE MERITS

**1.   FirstFire is engaged in business as an unregistered dealer in securities.**[4] *First, Defendant acts as an underwriter.* Regardless of what Fireman states in his declaration ("Fireman Decl."), underwriting activity is not measured solely by what you proclaim yourself to be. *See* 15 U.S.C. § 78c (20). Underwriting activity appears to be a deciding factor for the courts in recent cases, tipping the scales in favor of finding dealer activity.[5] As noted in Plaintiff's opening papers, FirstFire is in the business of purchasing convertible notes from penny-stock issuers, and its profits are achieved in essentially the same manner as in *River North* and *Big Apple*. FirstFire drafts the agreements that ensures acquisition of newly-issued stock at a substantial discount to the market. Upon conversion, FirstFire immediately sells the stock into the market to reap the spread between the discount and the market price.[6]

*Second,* the vast amount of buying and selling securities leads to the conclusion that FirstFire is acting as a securities dealer. FirstFire makes blind assertions that it is merely a "trader"

---

(Cooke, J., concurring); N.Y. G.O.L. § 5-511 (2)); *Bakhash v Winston*, 134 AD3d 468, 469, 19 N.Y.S.3d 887 (2015); *Fred Schutzman Co. v Park Slope Adv. Med. PLLC*, 128 AD3d 1007, 1008, 9 N.Y.S.3d 682 (2015).

[4] Defendants argue that DarkPulse has *waived* the position that FirstFire is a dealer under the Exchange Act. *See* Opp. at n.19; Fireman Decl. at ¶ 6. While its efforts to escape New York law speaks volumes about FirstFire's knowledge that the transaction was unlawful, the argument is simply wrong. Section 29(a) of the Act states that any contractual provision purporting to waive compliance with the Act or any regulation thereunder "**shall be void**."

[5] In *SEC v. River North Equity LLC*, 415 F. Supp. 3d 853, 859 (N.D. Ill. 2019), the court focused on the defendant's ability to acquire the issuer stock at a deep discount, generating a markup when it sold shares obtained from conversions. The court noted that the defendant "turned a profit not from selling only after market prices increased (like a trader), but rather from quickly reselling at a marked-up price." *Id.* The use of this "underwriting spread" mechanism to gain profits was also significant in the recent cases of *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 810 (11th Cir. 2015) and *SEC v. Almagarby*, 479 F. Supp. 3d 1266, 1272 (S.D. Fla. 2020).

[6] *See* Barron's Dictionary Fin. & Invest. Terms at 828 (definition of "dealer spread" or "underwriting spread," the difference between the amount paid to an issuer of securities and the amount paid by the public on the open market).

under the Act because it has "only ever sold securities on its own behalf and has never acted as an underwriter for an offering of securities." Opp. at 21. FirstFire neglects to mention that, ***as a part of its regular business,*** it acquires discounted stock directly from issuers and turns a profit by quickly reselling it at a marked-up price (a practice in which "traders" do not engage). *See SEC v. River North Equity LLC*, 415 F. Supp. 3d 853, 859 (N.D. Ill. 2019); *see also SEC v. GPL Ventures LLC*, (S.D.N.Y. Jan. 18, 2022) (rejecting defendant's "trader" argument and denying dismissal when complaint sufficiently alleged defendants engaged in "business of buying and selling securities").[7]

**2. *LG Capital* and *Vystar* are incorrectly decided.** The holdings in these cases are wrong because the courts examine only the performance of the transactions and ignore that ***the agreements were transactions in securities.*** *LG Capital* appears to be the first case addressing a 29(b) claim against purveyors of convertible promissory notes for a violation of § 15(a). The court rejected the claim, concluding that "nothing in the Note or the SPA indicates that those contracts 'could not have been legally performed" by an unregistered dealer." *Id.* at *15-16. The court overlooked that the agreements (constituted by a convertible note and share purchase agreement) were ***themselves securities***, and that an unregistered dealer would have violated the statute ***by merely entering into the transactions***. In *EMA Fin., LLC v. Vystar Corp.*, 2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021), the court repeated *LG Capital's* error, holding "assuming *arguendo* that the selling of converted shares made Ema a broker-dealer, the selling of those shares was not

---

[7] Defendants fail to rebut the allegations about their business model with a supporting declaration the way they seek to rebut the alleged stock sales under the April 2021 Note, simply averring that the Complaint does not set forth the necessary allegations (which it surely does!). ***Evidence of such sales are currently unknown to everyone other than the Defendants, hence, without discovery, it is not possible for <u>any</u> party to allege <u>specific</u> sales of stock,*** as FirstFire demands. Defendants also fail to adequately distinguish SEC enforcement actions from private party securities actions; not only is their contention incorrect, it would result in an absurd rule of law: that the securities laws may be violated so long as the SEC is not involved. *See Auctus Fund, LLC, v. Players Network, Inc.*, Case No. 20-cv-10766 (D. Mass. Dec. 10, 2021) (private plaintiff successfully stated claim for rescission under § 29(b)).

6

required by the contract." Thus, "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws." *Vystar,* 336 F.R.D. 75, 81. Like *LG Capital*, *Vystar* overlooks the indisputable fact that the agreement in that case was a convertible promissory note (a security) and share purchase agreement (a security) containing an option to convert (a security) debt into stock (security). As with *LG Capital*, the agreements in *Vystar* are themselves securities and unlawful "when made" if they were effectuated **by an unregistered securities dealer**.[8] Moreover, DarkPulse's claim in this case is nearly identical to the violation in *Eastside Church*, where the plaintiff brought a 29(b) action for rescission effected by an entity determined to be an unregistered dealer under the Act. Accordingly, the court held that "under § 15(a)(1), National was prohibited from effecting the transactions here involved and thus *violated the Act by entering into those transactions*." *Eastside Church of Christ v. National Plan, Inc.*, 391 F.3d 357, 362 (5th Cir. 1968) (emphasis added).[9] For these reasons, reliance on *Vystar* and *LG Capital* is misplaced.[10]

**3. DarkPulse is in the "class of persons" that the Act was designed to protect**. *See Eastside Church*, 391 F.2d at 362 (finding that "[t]he requirement that brokers and dealers register

---

[8] DarkPulse's interpretation is not nearly as "novel" as FirstFire contends, but comports with the numerous cases voiding a contract because securities laws were violated in its *making*. *See, e.g., Mills*, 396 U.S. 375 (29(b) rescission based on fraudulent proxy statements); *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006).

[9] *Berkeley* involves rescission based both on the grounds that the contract was *made* in violation of § 10(b) *and* that *performance* violated the short-selling prohibitions in § 5 of the Securities Act of 1933. Though it rejected the "as performed" violation because short-selling was not part of the contract, it agreed with the "as made" claim.

[10] The cases cited by FirstFire are distinguishable because the initial agreements were not securities transactions, and hence the "as made" question never arose. Although *Frati v. Saltzstein*, 2011 U.S. Dist. LEXIS 25567, at *18 (S.D.N.Y. Mar. 14, 2011) involved a claim for rescission under 29(b) based on § 15(a), the contract at issue effected the purchase of shares in a hedge fund, which is excluded from the definition of "security" under the Act. *See* 15 U.S.C. § 78c(12)(A)(v). The court rejected the claim because the plaintiffs failed to allege any act requiring the defendant to be a registered broker-dealer. In *Foundation Ventures, LLC v. F2G, Ltd.*, 2010 U.S. Dist. LEXIS 81293 (S.D.N.Y. Aug. 11, 2010), the parties entered into an agreement on appointing FV to act as F2G's "exclusive finder" to raise $25 million in capital for F2G. Because the contract under scrutiny is a services contract (not a transaction in securities) any violation could only have been through performance.

is of the utmost importance in effecting the purposes of the Act" and that absent rescission under 29(b), "there would be no civil remedy for the failure to register.").

**4. FirstFire's allegation that DarkPulse is not an "unwilling and innocent party" because it has entered into "dozens of similar convertible notes" is meritless.** Opp. at 23. Such facts, even if true, are not relevant to the "unwilling innocent party" question. This language comes directly from § 29(b) and from *Mills*, 396 U.S. at 386-88, where the Supreme Court clarified that the *violator of the Act* had no right to void the contract, only the non-violating (or "innocent and unwilling") party. Here, FirstFire violated the Act when it effected a transaction in securities as an unregistered dealer, not DarkPulse. A party fails the "unwilling and innocent" test only if it actively participated or encouraged the violator's unlawful conduct—essentially applying the equitable defense of *in pari delicto*. In order to assert the defense, it must be shown that the fault of the parties is "clearly mutual, simultaneous, and relatively equal" and that the plaintiff was an active, essential, and knowing participant in the unlawful activity. *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 289 (D. Conn. 1979). *See also Reg'l Props.*, 678 F.2d at 562.[11]

### B. PLAINTIFF FACES IRREPARABLE HARM WITHOUT AN INJUNCTION

DarkPulse will suffer massive irreparable harm in the absence of a preliminary injunction. *First,* despite their argument that "there is a clear remedy at law…," Opp. at 15-16, Defendants acknowledge that "[t]he exact remedy under Section 29(b) for Section 15(a) violations specifically

---

[11] *Buffalo Forge Co. v. Ogden Corp.*, 555 F. Supp. 89 (W.D.N.Y. 1983) does not support Defendants' position. That case involved a company that had literally been on both sides of a transaction (sides that changed after the company was taken over). *Id*. at 906. Other cases rejecting 29(b) claims involve sophisticated traders engaging in extended courses of unethical behavior (*Drasner v. Thompson Secur. Inc*., 433 F. Supp. 485 (S.D.N.Y. 1977)) or even criminal behavior (*Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 469 F.2d 1166 (8th Cir. 1972)). Here, DarkPulse had nothing to do with FirstFire's decision to operate an unlawful enterprise. FirstFire's violation of Section 15(a) stems from a business model that it has been using for several years, with hundreds of small companies. It is this fact—that FirstFire has been "in the business of buying and selling securities for its own account"—that causes the violation here, not simply that it effected the securities transactions in this case.

is unclear…," *id.* at 16 n.13. Indeed, not only is there not an adequate remedy at law, **there is no remedy at law whatsoever,** hence no legal damages. This conclusion stems from the United States Supreme Court's opinion in *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11 (1979). In that case, the Court analyzed § 215 of the Investment Advisers Act, a provision nearly identical to § 29(b). In concluding that Section 215 did imply a private right of action, the Court also warned that the limited right to rescission under Section 215 does not include compensation for any diminution in the value of the complainant's investment alleged to have resulted from the unlawful conduct. The Court reasoned that "[s]uch relief could provide by indirection the equivalent of a private damage remedy" that Congress did not confer in the statute. *Transamerica*, 444 U.S. 24 at n.14. Subsequent to Transamerica, courts that had previously awarded damages under § 29(b) concluded that only rescission, not money damages, was the remedy provided in that section. *See, e.g., Reg'l Properties*, 678 F.2d 552.

*Second,* harm, including "immediate and long-term *irreparable* harm," *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, Case No. 11-11681-NMG (ECF No. 92) (Memorandum & Order), at *24-25 (D. Mass. 2011), occurs when a publicly-traded corporation faces price erosion of its securities and loss of market capitalization. *Id.* These harms can be caused by the unlawful selling of stock that detracts from an issuer's survival (as demonstrated by prevailing market prices). *See Barbara v. MarineMax, Inc.*, 2012 WL 6025604 (E.D.N.Y. Dec. 04, 2012) (publicly-traded company harmed when it "lost its economic viability" due to unlawful selling activity); *LaSala v. Bordier et Cie*, 519 F.3d 121, 131 (3d Cir. 2008) (a corporation's loss in value or economic viability is, in the first instance, a harm to the corporation).

### C. THE BALANCE OF HARDSHIPS FAVORS DARKPULSE

Contrary to FirstFire's allegations, DarkPulse did not delay in bringing this motion. DarkPulse understood that the highest risk of dumping (and intent to injure it) would come as soon as it commenced this case against FirstFire. Moreover, the action itself was not untimely, and Defendants' own authorities support this conclusion. *See* Opp. at 18 (citing *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 458 (S.D.N.Y. 2014), where the plaintiffs waited *nine months* to commence litigation). Indeed, Plaintiff commenced the instant action in *less than half the shortest period of time* that court's have found "unreasonable delay" warranting denial of an injunction. *See, e.g., Trends Analysts v. Freedonia Grp.*, 650 F.Supp. 1452, 1459 (S.D. N.Y. 1987) (finding unreasonable delay when 6 months passed between discovery of the actionable misconduct and filing of complaint). FirstFire attempts to demonstrate unreasonable delay by stating—**with no evidentiary support**—that DarkPulse was "clearly aware" Defendants were engaging in selling activity. In fact, ***Plaintiff has no means to verify whether Defendants sold one or tens of millions of newly-converted shares into the public markets,*** since it was unaware Defendants had already sold *more than 85 million shares during a 39-trading day period*. *See* Fireman Decl., at ¶ 30; *cf.* Opp. at 2-3 (incorrectly counting the 42 days). The imminent nature of Plaintiff's sought-after relief is further evidenced by the fact that ***on the same day this motion was filed,*** Defendants sold more than 3 million shares in a single trading day, contributing to the substantial erosion in DarkPulse's common stock experienced on that very day.

### CONCLUSION

For all the foregoing reasons, and all those set forth in Plaintiff's opening papers, Plaintiff respectfully requests that the Court grant its motion.

DATED: January 20, 2022                    Respectfully submitted,

*/s /   Gustave P. Passanante*
Gustave P. Passanante, Esq.
Eric J. Benzenberg, Esq.
**THE BASILE LAW FIRM, P.C.**
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.:    (516) 455-1500
Fax:    (631) 498-0748
Email: gus@thebasilelawfirm.com
            eric@thebasilelawfirm.com

***Attorneys for Plaintiff DarkPulse, Inc.***
