

390 North Broadway – Ste. 140 | Jericho, New York 11753
Main Telephone: (516) 455-1500 | Facsimile: (631) 498-0478

DALLAS | NEW YORK | NAPLES

March 17, 2022

The Honorable Edgardo Ramos
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:     *DarkPulse, Inc. v. FirstFire Global Opps. Fund, LLC, et al.*, Case No.1:21-cv-11222-ER

Dear Judge Ramos:

     In accordance with the Court's Individual Practices, Rule 2(A)(ii), Plaintiff DarkPulse, Inc. ("DarkPulse") provides herein its position on the March 14, 2022 letter filed by Defendants FirstFire Global Opportunities Fund, LLC ("FirstFire") and Eli Fireman ("Fireman"), requesting a pre-motion conference regarding their anticipated motion to dismiss DarkPulse's Complaint (ECF 1) pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) ("Request"). This litigation concerns the validity of two Senior Convertible Promissory Notes, dated April 26, 2021 and September 20, 2018 ("2021 Note" and "2018 Note," respectively, and the "Notes," collectively). Defendants' proposed motion would be futile under both state and federal law.

## I.     FirstFire's Attempt to Escape the Application of New York Law Using a Backdated Amendment Cannot Succeed Because the Loans are Void *Ab Initio*

     On October 14, 2021, the New York Court of Appeals in *Adar Bays v. GenesysID, Inc*., 37 N.Y.3d 320 (2021) held on a question certified from the U.S. Court of Appeals for the Second Circuit that a criminally usurious loan is void *ab initio* under N.Y. Gen. Oblig. Law § 5-511, *id*. at 323, stating: "loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: *complete invalidity of the loan instrument*," *id*. at 333 (emphasis added).

     Here, the 2021 Note is criminally usurious without the need for a valuation of the conversion option.[1]  *See Adar Bays*, 37 N.Y.3d at 336. Despite the stated 10% interest rate, the 2021 Note is patently usurious when the value of the 60,000,000 commitment shares is added to the interest rate and are considered *retained interest*; accordingly, the value of the up-front payments are to be subtracted from the amount the borrower received at closing.  *See* April SPA 2021 § (C)(1)(a). The face value of restricted stock is generally discounted in some way.  *Simon v. Electrospace Corp.*, 269 N.E.2d 21, 27 (1971). A precise valuation is not necessary to find usury where the only question is whether the added stock value

---

[1] Even if such a calculation were needed to find the 2021 Note to be usurious, such an analysis is not appropriate on a motion to dismiss.  *See Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000). A 12(b)(6) motion to dismiss is "inappropriate unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [them] to relief."  *Id.* at 681. Similarly, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(3) a plaintiff need only plead facts sufficient for a prima facie showing of venue.  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

The Honorable Edgardo Ramos
March 17, 2022
Page 2 of 3

causes the interest rate to exceed the legal maximum. Here, *even when the shares are discounted by 90%*, the value of the commitment shares is so substantial that the loan is still charging **31% APR**.[2]

An amendment to the original agreement can be of no effect for the simple reason that the original agreement is void *ab initio*; one cannot amend what no longer exists. *DeSola Grp., Inc. v. Coors Brewing Co*., 199 A.D.2d 141, 141-42 (1st Dep't 1993); *see also Signature Fin. LLC v. Neighbors Global Holdings, LLC*, 281 F. Supp. 3d 438, 446 (S.D.N.Y. 2017). Accordingly, FirstFire's Amendment to the 2021 Note, purporting to change the governance of the transaction to Delaware law by backdating the "entered into" date to October 14, 2021 — the very day that *Adar Bays* was decided — is a legal nullity.

## II.     DarkPulse's Dealer Registration Claims are Not Time-Barred

The statute of limitations does not bar the claims based on FirstFire's transactions in securities as an unregistered dealer. FirstFire "*effected*" multiple transactions in securities, first, by entering into the Notes, and, thereafter, by effecting *each conversion* and *every sale of stock*. Each of these actions is a fresh violation of § 15(a) of the Securities Exchange Act of 1934 (the "Act"). Such behavior is a textbook basis for the application of the continuing violation doctrine.[3] The last conversion under the 2018 Note was submitted on February 18, 2021, less than a year before this action was commenced. FirstFire's reliance on *Kahn v. Kohlberg, Kravis, Roberts & Co*., 970 F.2d 1030 (2d Cir. 1992) is misplaced because FirstFire's violation was not *reasonably discoverable* as of the date of the Notes. While it may have been easy to discover FirstFire's registration status, it was *impossible* to determine the extent of FirstFire's business — buying and selling securities for its own account — because much of that information is *not* publicly available. *See Auctus Fund, LLC, v. Players Network Inc. et al.*, No. 20-cv-10766-LTS at *18.

## III.     The Notes are Subject to Rescission Because FirstFire is an Unregistered Dealer

Notwithstanding the opinions of various other SDNY courts, which are not binding on this Court, § 29(b) of the Act provides that "[e]very contract **made** in violation of" the Act and every contract "the **performance of which**" violates the Act or any rule or regulation thereunder **shall be void.** § 29(b) (15 U.S.C. § 78cc(b)) (emphasis added). *See Mills v. Electric Auto-Lite Co*., 396 U.S. 375 (1970) (recognizing private right of action for rescission). DarkPulse's theory that FirstFire is engaged in the business of buying and selling securities for its own account (as it stated in its very own Request, at 3) as an unregistered securities dealer — requiring the agreements in this case to be voided and rescinded — is well-founded and has been adopted by numerous courts. *See, e.g.*, *SEC v. Fife*, No. 20-cv-5227, 2021 U.S. Dist. LEXIS 242126, at *11-21 (N.D. Ill. Dec. 20, 2021); *Auctus Fund, LLC, v. Players Network Inc., et al.*, No. 20-

---

[2] Average trading price on the date of transfer: $0.019 x 60,000,000 shares = $1,140,000 x .1 = $114,000. Principal amount borrowed: $825,000 - $114,000 = $711,000. Amount charged under 2021 Note pursuant to a November 17, 2021 conversion notice: $886,875 (principal + interest).

$$\frac{\$886,000 - \$711,000}{711,000} = \frac{175,000}{711,000} \times 100 = 24.6\% \times \frac{12}{9} = \textbf{31\% APR}$$

This calculation is *not* inclusive of original issue discounts and other fees charged to DarkPulse as part of the transaction, which are also considered retained interest.

[3] The Court need not (and should not) make a final ruling on the application of the doctrine at this time, however. *See SEC v. Fiore,* 416 F. Supp. 3d 306, 331 (S.D.N.Y. 2019) (declining to grant 12(b)(6) motion on the basis of the doctrine, stating "[i]n light of the fact that all of the SEC's claims survive based on timely-pled allegations alone, the Court declines to determine at this stage [the effects of] the potential inapplicability of the . . . doctrine . . .").

The Honorable Edgardo Ramos
March 17, 2022
Page 3 of 3

cv-10766-LTS (Mem. Opin. and Order, D. Mass. Dec. 10, 2021); *SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla. 2020); *SEC v. Big Apple Consulting USA, Inc.*,783 F.3d 786 (11th Cir. 2015); *SEC v. Keener*, 2020 WL 4736205 (S.D. Fla. Aug. 14, 2020); *SEC v. Fierro*, 2020 WL 7481773 (D.N.J. Dec. 18, 2020); *SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019).  The contrary SDNY decisions should be rejected as they wrongly allow violators of the Act to commit more violations so long as they do so at their own leisure, without a contractual obligation.[4]

## IV.    The Remaining Causes of Action are Properly Pled

Defendants cite to *Lapin v. Goldman Sachs Group, Inc*., 506 F. Supp. 2d 221, 248 (S.D.N.Y. 2006) for the proposition that *scienter* is a required element of a § 20(a) violation.  On the very same page cited to by Defendants, however, the court stated that requiring a § 20(a) plaintiff to plead scienter is "inconsistent with the language of the statute."  Further, *Lapin* is distinguishable because it analyzes a 20(a) violation in the context of § 10(b), a claim which in itself *requires scienter to be pled*.  Because DarkPulse states actionable claims in Counts I-III, the remaining state law claims should not be dismissed.

If the Court elects to permit Defendants to file their motion to dismiss, DarkPulse respectfully asks that it be allowed to file an amended complaint in lieu of an opposition brief.

Respectfully submitted,

**THE BASILE LAW FIRM P.C.**

By:*/s/ Gustave Passanante*
GUSTAVE PASSANANTE, ESQ.
390 North Broadway, Suite 140
Jericho, NY 11753
Tel.: (516) 455-1500
Fax: (631) 498-0748
Email:  gus@thebasilelawfirm.com
*Attorneys for Plaintiff DarkPulse, Inc.*

---

[4] DarkPulse is hopeful that the Second Circuit will correct the error in these decisions, which is presented on the pending appeal in *EMA Financial, LLC v. Joey Chancis, et al*., USCA Second Circuit 22-274 (L).