**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DARKPULSE, INC.,

        Plaintiff,

v.

FIRSTFIRE GLOBAL OPPORTUNITIES
FUND, LLC and ELI FIREMAN

        Defendants.

Index No. 1:21-cv-11222 (ER)

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**FACTUAL BACKGROUND** .................................................................................... **2**

    A.    DPLS's History of Issuing Convertible Promissory Notes.................................. 2

    B.    The FirstFire Notes. ......................................................................................... 3

    C.    The Amendment to the 2021 Note...................................................................... 4

    D.    The Events of Default. ....................................................................................... 4

    E.    The Conversion and the Dispute....................................................................... 5

    F.    Procedural History ........................................................................................... 6

**ARGUMENT** ............................................................................................................. **6**

**I.**    **PLAINTIFF CANNOT AVOID ITS AGREEMENT TO DESIGNATE
DELAWARE AS THE FORUM FOR ALL DISPUTES AS TO THE 2021
NOTE.** .............................................................................................................. **7**

    **A.**    **The Exclusive Forum Provision in the 2021 Note Is Enforceable.** .................. 7

    **B.**    **Enforcement of the Forum Provision Would Not Be Unreasonable or
Unjust.** ............................................................................................................ 8

**II.**    **PLAINTIFF'S EXCHANGE ACT CLAIMS (COUNTS I–III) ARE
MERITLESS.** ................................................................................................... **11**

    A.    Plaintiff's Claims Are Time-Barred as to the September 2018 Note. ................. 11

    B.    The Notes Did Not Involve a Prohibited Transaction. ......................................... 12

    C.    FirstFire Is Not a Dealer Within the Meaning of the Exchange Act. .................. 13

    D.    The Complaint Fails to Allege Control Person Liability...................................... 15

**III.**    **PLAINTIFF'S RICO CLAIM (COUNT IV) FAILS ON EVERY
REQUIRED ELEMENT.** ................................................................................. **16**

    A.    Plaintiffs Have Not Alleged a "Person" Distinct from an Enterprise.................. 17

    B.    DPLS Has Not Shown Any "Unlawful Debt." .................................................... 18

(i)    New York Law Does Not Apply to Either Note. ...................................... 18

(ii)   Even if New York Law Applies, DPLS's Claim Fails. ........................... 21

(iii)  Plaintiff Fails to Allege FirstFire Is in the Business of Lending at
       Usurious Rates. ........................................................................................ 23

**IV.    PLAINTIFF'S STATE LAW CLAIMS (COUNTS V-VI) MUST BE
       DISMISSED.................................................................................................. 24**

**CONCLUSION ................................................................................................... 25**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1077 Madison Street, LLC v. Daniels*,
 954 F.3d 460 (2d Cir. 2020)...................................................................................22

*Acklin v. Eichner*,
 2021 WL 4442819 (S.D.N.Y. Sept. 27, 2021)........................................................24

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
 37 N.Y.3d 320 (2021) ......................................................................................10, 22

*Alpha Cap. Anstalt v. Oxysure Sys., Inc.*,
 216 F. Supp. 3d 403 (S.D.N.Y. 2016)....................................................................11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007)......................................................................................2

*Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*,
 268 F.3d 103 (2d Cir. 2001)...................................................................................16

*BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*,
 2009 WL 264088 (Del. Ch. Feb. 3, 2009) .............................................................25

*Bakerman v. Sidney Frank Importing Co., Inc.*,
 2006 WL 3927242 (Del. Ch. Oct. 10, 2006) ..........................................................25

*Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*,
 2017 WL 913791 (S.D.N.Y. Mar. 7, 2017) .......................................................22, 23

*Bentley v. Providian Fin. Corp.*,
 2003 WL 22234700 (S.D.N.Y. Apr. 21, 2003)........................................................11

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
 534 F. Supp. 3d 326 (S.D.N.Y. 2021)................................................................11, 12

*Cellucci v. O'Leary*,
 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020)...........................................................23

*Chassman v. Shipley*,
 695 F. App'x 630 (2d Cir. 2017) ............................................................................22

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
 70 N.Y.2d 382 (1987).............................................................................................25

*Contract Transport Servs., Inc. v. New Era Lending LLC*,
 2018 WL 11226077 (S.D.N.Y. Oct. 26, 2018)........................................................24

*Cottonwood Holdings, Inc. v. C3, Inc.*,
  1995 WL 276196 (S.D.N.Y. May 11, 1995) ..........................................................9

*Dae Hyuk Kwon v. Santander Consumer USA*,
  742 F. App'x 537 (2d Cir. 2018) ................................................................17, 22

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)..........................................................................17

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
  755 F.2d 239 (2d Cir. 1985)......................................................................19, 24

*EMA Fin., LLC v. NFusz, Inc.*,
  444 F. Supp. 3d 530 (S.D.N.Y. 2020)......................................................10, 19, 21

*EMA Fin., LLC v. NFusz, Inc.*,
  509 F. Supp. 3d 18 (S.D.N.Y. 2020)...............................................................13

*EMA Fin., LLC v. Vystar Corp., Inc.*,
  2021 WL 1177801 (Mar. 29, 2021) ................................................................13

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)....................................................................................16

*FCX Solar, LLC v. FTC Solar, Inc.*,
  2022 WL 355606 (S.D.N.Y. Feb. 7, 2022)........................................................25

*Fezzani v. Bear, Stearns & Co., Inc.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004)..............................................................16

*Found. Ventures, LLC v. F2G, Ltd.*,
  2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010)................................................14, 15

*Frati v. Saltzstein*,
  2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ...............................................13, 24

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co. Inc.*,
  449 F.3d 377 (2d Cir. 2006)......................................................................24, 25

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)..............................................................16

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)......................................................................................20

*Hottinger v. Amcoal Energy Corp.*,
  1992 WL 349851 (S.D.N.Y. Nov. 10, 1992).......................................................12

*Intima-Eighteen, Inc. v. A.H. Schreiber Co., Inc.*,
  568 N.Y.S.2d 802 (1st Dep't 1991)................................................................10

*JD Anderson v. Binance*,
2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) .............................................................. 12

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
970 F.2d 1030 (2d Cir. 1992) .......................................................................... 11, 12

*Krock v. Lipsay*,
97 F.3d 640 (2d Cir. 1996) .................................................................................... 24

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ................................................................... 15

*Leasing Serv. Corp. v. Graham*,
646 F. Supp. 1410 (S.D.N.Y. 1986) ......................................................................... 9

*LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*,
2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018) ...................................................... 13

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*,
122 N.Y.S.3d 309 (2d Dep't 2020) ...................................................................... 10

*Lynn v. McCormick*,
2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017) ...................................................... 18

*Lynn v. McCormick*,
760 F. App'x 51 (2d Cir. 2019) ........................................................................... 18

*Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.*,
1995 WL 409015 (Del. Ch. July 5, 1995) ............................................................ 25

*Ministers & Missionaries Ben. Bd. v. Snow*,
26 N.Y.3d 466 (2015) ........................................................................................... 19

*Moses v. Apple Hospitality Reit Inc.*,
2015 WL 1014327 (E.D.N.Y. Mar. 9, 2015) ........................................................ 25

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) .................................................................. 16

*O'Neill v. Standard Homeopathic Co.*,
346 F. Supp. 3d 511 (S.D.N.Y. 2018) .................................................................... 2

*Omega Overseas Partners, Ltd. v. Griffith*,
2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ........................................................ 13

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
2022 WL 480475 (2d Cir. 2022) ..................................................................... 17, 24

*Pompano-Windy City Partners, Ltd. v. Bear Sterns & Co., Inc.*,
794 F. Supp. 1265 (S.D.N.Y. 1992) ...................................................................... 15

*Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*,
  2021 WL 4463921 (E.D.N.Y. Aug. 17, 2021)........................................................8

*Power Up Lending Grp., Ltd. v. Cardinal Energy Group, Inc.*,
  2019 WL 1473090 (E.D.N.Y. Apr. 3, 2019) .......................................................19

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994)................................................................................17

*RMP Cap. Corp. v. Bam Brokerage, Inc.*,
  21 F. Supp. 3d 173 (E.D.N.Y. 2014) .................................................................11

*Rosenson v. Mordowitz*,
  2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012).....................................................16

*Sabre Int'l Sec., Ltd. v. Vulcan Cap. Mgmt., Inc.*,
  95 A.D.3d 434 (N.Y. App. Div. 2012)................................................................25

*Sadallah v. City of Utica*,
  2004 WL 1949416 (2d Cir. Sept. 3, 2004) .........................................................24

*Superior Funding Corp. v. Big Apple Cap. Corp.*,
  738 F. Supp. 1468 (S.D.N.Y. 1990)...................................................................11

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
  2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) ....................................................13

*Thea v. Kleinhandler*,
  807 F.3d 492 (2d Cir. 2015)..............................................................................11

*U1it4less, Inc. v. Fedex Corp.*,
  871 F.3d 199 (2d Cir. 2017)..............................................................................17

*Union Cap. LLC v. Vape Holdings Inc.*,
  2017 WL 1406278 (S.D.N.Y. Mar. 31 2017) .....................................................23

*United States v. Moseley*,
  980 F.3d 9 (2d Cir. 2020) ...........................................................................10, 11

*Virgo Penn Bus. Ctrs. LLC v. Williamsport Holdings LLC*,
  2020 WL 5576690 (N.Y. Sup. Ct. Sept. 16, 2020)..............................................21

*Wade Park Land Holdings, LLC v. Kalikow*,
  2022 WL 657664 (S.D.N.Y. Mar. 4, 2022) ...................................................17, 18

*Weiss v. Columbia Pictures Television, Inc.*,
  801 F. Supp. 1276 (S.D.N.Y. 1992)....................................................................7

*Zerman v. Jacobs*,
  510 F. Supp. 132 (S.D.N.Y. 1981).....................................................................13

*Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*,
  2021 WL 1668134 (S.D.N.Y. Apr. 28, 2021) ........................................................................8

*Zurch Ins. Co. v. Shearson Lehman Hutton, Inc.*,
  84 N.Y.2d 309 (1994) ........................................................................................................20

**Statutes**

A.R.S. § 44-1201(A) ....................................................................................................................21

15 U.S.C. § 78 ..............................................................................................................11, 12, 14

18 U.S.C. § 1961 ..........................................................................................................................17

18 U.S.C. § 1962 ..........................................................................................................................16

28 U.S.C. § 1332 ..........................................................................................................................24

Del. Code Ann. tit. 6, §§ 2301(c), 2304(a), 2306 ......................................................................19

N.Y. Penal Law § 190.40 ............................................................................................................10

NRS 99.050 ..................................................................................................................................19

Va. Code Ann. § 6.2-308 (2010) ..................................................................................................20

**Rules**

Fed. R. Civ. P. 12(b) ......................................................................................................................7

Plaintiff seeks to undo two transactions as somehow voidable that are perfectly legitimate and virtually identical to dozens of transactions entered into by Plaintiff over the past several years that have provided, and continue to provide, Plaintiff with large infusions of cash to help its business.   Plaintiff DarkPulse, Inc's ("DPLS") twice sought and accepted investments from Defendant FirstFire Global Opportunities Fund, LLC ("FirstFire") through convertible notes that gave FirstFire the right to convert the debt into shares in DPLS should DPLS fail to pay the notes back in cash.   The first note, entered by DPLS and FirstFire in 2018 (the "2018 Note"), was converted by FirstFire into DPLS shares without incident or objection.   However, soon after FirstFire converted the second note (the "2021 Note," and together with the 2018 Note, the "Notes") in November 2021, DPLS objected, triggering litigation in Delaware and in this Court.

DPLS's latest iteration of a complaint fails for several principal reasons.   *First*, Plaintiff's claims as to the 2021 Note were brought in the wrong forum due to the Note's Delaware exclusive forum clause.   *Second*, DPLS's unregistered dealer claims are time-barred as to the 2018 Note and meritless as to both Notes—this claim was already criticized on the merits by this Court on DPLS's motion for a preliminary injunction, based on a steady line of decisions in this District rejecting the cause of action.   *Third*, DPLS now seeks through its amended complaint to turn this garden-variety contract dispute into a civil RICO claim, alleging (without any supporting facts) that the Defendants are engaged in some unspecified criminal enterprise—however, every element of a civil RICO claim is absent here.   *Fourth*, without a federal question this Court lacks subject matter jurisdiction over DPLS's state law claims, but regardless of jurisdiction, DPLS has failed to plead the necessary elements of the state law claims.

Despite DPLS's accusations and invective, the reality here is simple:   DPLS willingly agreed to the Notes, including the very terms it now disputes. Indeed, DPLS is a sophisticated

party that has entered into *many* convertible notes and other similar instruments over the years, including in recent months.  In short, DPLS has provided no basis for the Court to rescind or otherwise refuse to enforce the plain terms of the Notes, and as a result, its claims must be dismissed.

## FACTUAL BACKGROUND

### A.    DPLS's History of Issuing Convertible Promissory Notes.

DPLS is a small-cap company that was formed in 2018 as the result of a merger.  (Decl.[1] Ex. A, DarkPulse, Inc., Form 424B4 (Prospectus) (May 3, 2022) at 24, 27.)[2]  DPLS has financed its business through the issuance of convertible promissory notes—notes that give the holder the option to convert the outstanding balance to shares of DPLS common stock rather than receive repayment in cash.  (*Id.* at 20–21; Decl. Ex. B, DarkPulse, Inc., Quarterly Report (Form 10-Q) (May 16, 2022) at 28 ("We have been able to raise working capital to fund operations through the issuances of convertible notes or obtained through the issuance of our restricted common stock.").) Between July 2018 and November 2021, DPLS entered into approximately 20 different convertible notes with multiple investment funds, including the Notes with FirstFire that are the subject of this dispute.  (Decl. Ex. A., Prospectus at 20–21; Decl. Ex. C, DarkPulse, Inc., Annual Report (Form 10-K) (Apr. 14, 2019) at 15–16.)  And in 2020 and in 2021, on 36 separate occasions those notes were converted, with DPLS issuing over 3,545,370,000 common shares in connection with these

---

[1] "Decl." refers to the Declaration of Aaron Marks submitted herewith.  "FAC" or "First Amended Complaint" refers to DPLS's First Amended Complaint filed on May 5, 2022 (Dkt No. 29).  "Tr." refers to the Transcript of the hearing on DPLS's motion for a preliminary injunction held on January 21, 2022 (Dkt. No. 24).  Unless otherwise specified, all emphasis has been added and internal quotations and citations omitted.

[2] The documents that the Court may consider in deciding this motion include "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court may additionally take notice of news articles and websites where they are publicly available and their authenticity is not reasonably in dispute. *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 519 nn.1–2 (S.D.N.Y. 2018).

36 conversions, including the 177,375,000 common shares issued to FirstFire.  (Decl. ¶ 6.)  In the first quarter of 2022 alone, DPLS issued around 200,121,061 shares of common stock for approximately $7.2 million.  (Decl. Ex. B, DarkPulse, Inc., Quarterly Report (Form 10-Q) (May 16, 2022) at 6, 21–22.)

 **B.** **The FirstFire Notes.**

  FirstFire is an investment fund focusing on small- to medium-sized public and private companies.  FirstFire's expertise is in distressed, special situations, and event-driven investing, both as equity and as a debt participant.  (FAC ¶ 20.)  In this capacity, FirstFire's investments can provide a lifeline for distressed companies.  (*Id.*)

  DPLS first sought an investment from FirstFire in 2018.  In September 2018, DPLS issued the 2018 Note and a Securities Purchase Agreement.  (*Id.* ¶ 26.)  FirstFire converted the 2018 Note to DPLS common shares (totaling 879,400,000) in multiple partial conversions in 2019, 2020 and 2021.  (*Id.* ¶ 32.)

  On April 26, 2021, DPLS sought an additional infusion of cash from FirstFire, when it entered into a second Securities Purchase Agreement (the "2021 SPA"), a Registration Rights Agreement (the "RRA"), and the 2021 Note with FirstFire.  (*Id.* ¶¶ 37, 49 n.14.)  Under the 2021 SPA, FirstFire agreed to provide DPLS with $750,000 in cash (provided on April 30) in exchange for the 2021 Note.  (*Id.* ¶ 37.)  The 2021 Note provides for a principal sum of $825,000 and includes an interest rate of 10% per annum.  (*Id.*)

  As with the 2018 Note, the 2021 Note provides FirstFire with a conversion right, whereby FirstFire could forego repayment of the 2021 Note in cash and, instead, convert outstanding amounts owed under the 2021 Note (principal and interest) to shares of DPLS common stock.  (*Id.* Ex. 2 at 3.)  However, whereas the 2018 Note's conversion price was variable (based on market price at the time of conversion, discounted by 30% or 35%), the 2021 Note's conversion price was

"fixed."  (*Id.* ¶ 39.)   In particular, Section 1.2(a) of the 2021 Note provides for a per-share conversion price of $0.015 per share—the "Fixed Conversion Price" or, alternatively, a "Default Fixed Conversion Price" of $0.005 per share, applicable if an "Event of Default" occurs.  (*Id.*)

### C.     The Amendment to the 2021 Note.

On or about November 4, 2021, FirstFire and DPLS executed "Amendment No. 1 to the Convertible Promissory Note Issued on April 26, 2021" (the "Amendment").  (*Id.* ¶ 46.)   The Amendment changes the choice-of-law and exclusive-forum provisions from New York to Delaware.  (*Id.*)  DPLS's CEO, Dennis O'Leary, executed the Amendment while O'Leary and Mr. Fireman were together.  (*Id.* ¶¶ 46–47.)

### D.     The Events of Default.

The 2021 Note and RRA together define a series of "Events of Default."   Among other things, the RRA (Section 2(b)) requires DPLS to use commercially reasonable efforts to file a registration statement covering the resale of the shares of DPLS common stock issued or issuable to FirstFire pursuant to the 2021 SPA and with respect to the 2021 Note and any conversion thereof (the "Registrable Shares"), within ninety (90) days following the funding of the 2021 Note.  (FAC ¶ 49 n.14; Decl. Ex. E, RRA § 2(b).)  Section 3.16 of the 2021 Note provides that it shall be an Event of Default if DPLS issues common shares pursuant to an equity line of credit or otherwise in connection with a Variable Rate Transaction entered into after the date of the 2021 Note.  (FAC Ex. 2 at 15.)  During the relevant time period, DPLS engaged in at least two Events of Default.

First, the deadline for DPLS to file a registration statement with respect to the Registrable Shares related to the Note was July 26, 2021.  (FAC ¶ 49 n.14.)  DPLS failed to do so, and in fact has still not filed a registration statement with respect to such shares nor has any such registration statement been declared effective.  FAC ¶ 49 n.14; Decl. ¶ 8.)

Second, DPLS entered into a series of transactions with GHS Investments, LLC ("GHS") that constituted Events of Default.  On August 19, 2021, DPLS entered into a purchase agreement (the "August GHS Agreement") granting DPLS the right to sell to GHS up to $45,000,000 of shares of DPLS common stock at variable rates from time to time at DPLS's discretion.  (Decl. Ex. A, Prospectus at 21.)  Then again, on November 9, 2021, DPLS entered into a second purchase agreement (the "November GHS Agreement" and, together with the August GHS Agreement, the "GHS Agreements") with GHS granting DPLS the right to sell to GHS up to an additional $30,000,000 of shares of DPLS common stock at variable rates from time to time at DPLS's discretion.  (*Id.* at 15.)  DPLS issued shares of DPLS common stock to GHS pursuant to the August GHS Agreement on at least five closings between August 19, 2021 and October 14, 2021.  (*Id.* at 21–22.)  The GHS Agreements are equity lines of credit and Variable Rate Transactions under the 2021 Note.  Accordingly, the issuance of shares of DPLS common stock pursuant to the GHS Agreements triggered an Event of Default under the 2021 Note.  (FAC Ex. 2 at 15.)

E.      **The Conversion and the Dispute.**

On November 15, 2021, consistent with the procedure specified in the 2021 Note,[3] Nick Fireman, an officer of FirstFire, emailed DPLS CEO Dennis O'Leary, at his darkpulse.com email address, a copy of a notice of conversion (the "Notice of Conversion") whereby FirstFire elected to convert the $825,000 principal and $61,875 of interest outstanding on the 2021 Note into 177,375,000 shares of DPLS common stock.  Because of DPLS's defaults, FirstFire's calculations relied on the Default Fixed Conversion Price of $0.005 per share.  (FAC ¶¶ 48–49.)  On November 17, 2021, again in accordance with the 2021 Note, FirstFire submitted the same Notice of

---

[3] Section 1.4(a) of the 2021 Note provides that "[t]his Note may be converted by the Holder in whole or in part, on any Trading Day, while any amounts are outstanding hereunder, by submitting to the Borrower or Borrower's transfer agent a Notice of Conversion."  (FAC Ex. 2 at 5.)

Conversion, along with a legal opinion and related materials, to the Transfer Agent, and the Transfer Agent confirmed the issuance of the shares of DPLS common stock later the same day. (*Id.* ¶ 49.)  DPLS initially objected only to the total *amount* of the converted shares on the 2021 Note, arguing that it had not defaulted.  (*Id.* ¶ 49 & n.15.)  Later, when it filed this action, DPLS argued for the first time that both the 2018 and 2021 Notes should be rescinded entirely.  (Dkt. No. 1.)

### F.    Procedural History.

After DPLS disputed FirstFire's conversion of the 2021 Note, FirstFire filed an action in the Delaware Chancery Court seeking, *inter alia*, declaratory judgment that FirstFire's conversion was appropriate.  (FAC ¶ 49 n.15.)[4]  In response, DPLS filed this action on December 31, 2021, and sought both a temporary restraining order and a preliminary injunction, both of which the Court denied.  (Dkt. No. 14.)

On March 14, 2022, Defendants filed a pre-motion to dismiss letter.  (Dkt. No. 26.)  DPLS countered on March 17, 2022 requesting leave to file an amended complaint.  (Dkt. No. 28.)  At the pre-motion conference on April 14, 2022, Defendants agreed to DPLS's request to file an amended complaint, which DPLS filed on May 5, 2022.  (Dkt. No. 29.)  The FAC asserts six causes of action, including counts (i), (ii), and (iii) that allege FirstFire operated as an unregistered securities dealer controlled by Mr. Fireman; (iv) civil RICO; (v) unjust enrichment; and (vi) constructive trust.  Defendants now move to dismiss all Counts of the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).

### **ARGUMENT**

---

[4] On March 14, 2022, FirstFire voluntarily dismissed the Delaware action without prejudice, *FirstFire Global Opportunities Fund LLC v. DarkPulse, Inc.*, C.A. No. 2021-1082-LWW (Del. Ch.), Dkt. No. 33, after having defeated DPLS's motion for a preliminary injunction and having sold the relevant DPLS common shares it desired to sell from its partial conversion of the 2021 Note.

I.     **PLAINTIFF CANNOT AVOID ITS AGREEMENT TO DESIGNATE DELAWARE AS THE FORUM FOR ALL DISPUTES AS TO THE 2021 NOTE.**

A.     **The Exclusive Forum Provision in the 2021 Note Is Enforceable.**

As a threshold matter, Counts I and II (to the extent related to the 2021 Note) must be dismissed because the parties have agreed that Delaware is the exclusive forum for all actions arising under its terms.   Through the Amendment, DPLS agreed that "[a]ny action brought by either party against the other concerning the transactions contemplated by this [amendment], the [2021] Note, the Warrant, or any other agreement . . . shall be brought only in the state courts of Delaware or in the federal courts located in the state of Delaware."  (Decl. Ex. F at 1, Amendment ¶ 2.)  Indeed, in denying the preliminary injunction, the Court held that the "forum selection clause is presumptively enforceable, and thus this action is not properly before this Court."  (Tr. at 43:22–25.)

The Second Circuit has a "strong policy of enforcing forum selection agreements."  *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1280 (S.D.N.Y. 1992).   "Courts analyzing a contractual forum selection clause must first ask:   (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, *i.e.*, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause."  *Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*, 2021 WL 4463921, at *5 (E.D.N.Y. Aug. 17, 2021),  *R. & R. adopted*, 2021 WL 4463494 (E.D.N.Y. Sept. 29, 2021).   Where the forum-selection clause was communicated to the non-moving party and covers "the claims and parties involved in the dispute," it is presumptively enforceable" unless the moving party makes "a sufficiently strong showing that enforcement would be unreasonable

or unjust, . . . that the clause was invalid for such reasons as fraud or overreaching," or that the "clause[] contravene[s] a strong public policy of the forum state."  *Id.* at *5, 8.[5]

First, the existence of the forum-selection clause was communicated to DPLS.  DPLS admits that Mr. "Fireman presented [DPLS CEO Mr.] O'Leary with a one-page amendment to the April 2021 Note." (FAC ¶ 46). Although DPLS alleges its CEO lacked information about the forum-selection change (*id.* ¶ 47), that change is apparent on the face of the document, highlighted with a bolded and underlined heading, "**Governing Law; Venue**."   Moreover, the Court previously held that DPLS "cannot reasonably contest that the forum selection clause was communicated to it" (Tr. at 44:8–12).   Second, the relevant language is mandatory:  actions "concerning the transactions contemplated by" the 2021 Note and SPA "shall be brought only in the state courts of Delaware or in the federal courts located in the state of Delaware."  (Decl. Ex. F at 1, Amendment ¶ 2); *Power Up*, 2021 WL 4463921, at *6.  Third, the forum-selection clause governs the parties and the claims at issue in this action to the extent it arises out of the 2021 Note and SPA.  (Tr. at 44:16–20 (holding the forum-selection clause "covers this action")).  Thus, the forum-selection clause is presumptively enforceable.

### B.   Enforcement of the Forum Provision Would Not Be Unreasonable or Unjust.

There is also no realistic argument that enforcing the forum-selection clause would be unreasonable, unjust, or violate a fundamental policy.  DPLS is a sophisticated party, and Mr. O'Leary a sophisticated businessman, with previous experience negotiating contracts containing forum-selection clauses.  (*See* FAC ¶ 40.)  This Court agreed, noting that "Mr. O'Leary, . . . as CEO of the company, was sufficiently sophisticated to understand" the Amendment.  (Tr. at 44:8–

---

[5] Where, as here, this action arises under federal law, the "enforceability of the forum selection clause is governed by federal common law" and matters of interpretation are "governed by the parties' chosen body of law."  *Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, 2021 WL 1668134, at *2 (S.D.N.Y. Apr. 28, 2021).

12.)   DPLS alleges that Mr. "Fireman failed to mention to [Mr.] O'Leary that the amendment . . . replaced the choice of law provision." (FAC ¶ 47.)  Even if true (which it is not), Mr. Fireman was not required to explain in detail the contents of the Amendment to Mr. O'Leary in order for the Amendment to be enforceable.  *Leasing Serv. Corp. v. Graham*, 646 F. Supp. 1410, 1415 (S.D.N.Y. 1986) ("If [a businessman] did not read [a contract's terms] or hire counsel to do so, he is the victim of his own lack of diligence, not [Defendants'] misconduct.").  "Moreover, [there is] evidence in the record that [Mr. O'Leary] also had the advice of counsel at the time that he signed it." (Tr. at 44:13–14.)  In short, because DPLS cannot meet its burden to show that the Amendment was unfair or obtained fraudulently, the forum-selection clause is valid and enforceable as to all of DPLS's claims relating to the 2021 Note.  *See Cottonwood Holdings, Inc. v. C3, Inc.*, 1995 WL 276196, at *3–4 (S.D.N.Y. May 11, 1995).

Instead, DPLS argues that the Amendment is invalid as the 2021 Note is "void *ab initio*" and "any subsequent amendments . . . are a nullity."[6] (FAC ¶ 78.)  DPLS also raised this argument when it sought a preliminary injunction, to no avail. (Dkt. No. 22 at 3–5; Tr. at 43:23–44:20.) New York law explicitly prohibits corporations from raising usury as a defense.  N.Y. GOL § 5-521(1).  There is a single exception that permits a corporation to bring criminal usury as a defense when the rate of interest exceeds 25% per year.  N.Y. GOL § 5-521(3); N.Y. Penal Law § 190.40. However, this statutory exception "is strictly an affirmative defense to an action seeking repayment of a loan and may not . . . be employed as a means to effect recovery by the corporate borrower." *Intima-Eighteen, Inc. v. A.H. Schreiber Co., Inc.*, 568 N.Y.S.2d 802, 804 (1st Dep't 1991); *see also LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 313 (2d Dep't 2020) ("[T]he defendants may assert criminal usury as an affirmative defense, they may not assert

---

[6] DPLS additionally ignores that the effective date of the Amendment was retroactive to the date of the Note. (Decl. Ex. F at 2.)

criminal usury as the basis for a counterclaim."); *cf. Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 335 (2021) ("[U]sury is an affirmative defense . . . ."). This is not an action to collect on the Notes and DPLS may not use usury law to avoid a valid forum-selection clause.

To the extent DPLS argues that enforcement would violate a strong public policy of the forum state, this is equally unavailing. New York courts have found such rights as anti-discrimination laws and human rights to be fundamental, whereas preventing usurious transactions between sophisticated corporate entities who both routinely enter into convertible notes, are not. *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 542 (S.D.N.Y. 2020). Here, where the parties are both corporations well-versed in promissory notes and securities purchase agreements, New York's usury law does not represent a fundamental public policy. In analyzing a choice-of-law provision, the Second Circuit recently identified a "longstanding public policy in New York in favor of enforcing its usury laws to protect those of its residents who enter into consumer debt contracts," but distinguished cases involving corporate borrowers—"the antithesis of the type of needy and unsophisticated consumers both at issue here and of concern to the New York Court of Appeals." *United States v. Moseley*, 980 F.3d 9, 22 (2d Cir. 2020). In *Moseley*, the Second Circuit instructed that "when courts determine whether New York would enforce choice-of-law provisions set out in a contract, corporations conducting their business transactions should be treated differently from individual consumers seeking personal credit" and affirmed the line of cases in this Circuit that rejected applying the public policy exception to choice-of-law provisions between two corporations. *Id.*; *RMP Cap. Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 186 (E.D.N.Y. 2014); *Bentley v. Providian Fin. Corp.*, 2003 WL 22234700, at *3 (S.D.N.Y. Apr. 21, 2003); *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1471 (S.D.N.Y. 1990). As usury cannot be used affirmatively as DPLS suggests and the enforcement of the forum-selection

clause does not violate a public policy of New York, DPLS has identified no reason to avoid enforcement, the claims related to the 2021 Note must be dismissed.

## II.     PLAINTIFF'S EXCHANGE ACT CLAIMS (COUNTS I–III) ARE MERITLESS.

### C.     Plaintiff's Claims Are Time-Barred as to the September 2018 Note.

To the extent they are based on the 2018 Note, Counts I–III of the Complaint are time barred.  A statute of limitations defense may be decided on a Rule 12(b)(6) motion "if the defense appears on the face of the complaint."  *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).  A Section 29(b) action must be brought within "one year after the discovery that [a] sale or purchase involves [a violation of Section 15(a)] and within three years after such violation."  15 U.S.C. § 78cc(b).  While the three-year statute of limitations begins to run at the time of violation, *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1041–2 (2d Cir. 1992), *cert. denied*, 506 U.S. 986 (1992), the one-year statute of limitation runs from the "time when an individual could have, through the exercise of reasonable diligence, discovered the fraud at issue," *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016).  Because the same "statute[] of limitations that appl[ies] to primary claims under the 1933 and 1934 Acts also apply to control person claims," the Section 20(a) claim against Mr. Fireman as it relates to the 2018 Note must be dismissed as well.  *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 338 n.4 (S.D.N.Y. 2021).

Plaintiff's claim is barred by the three-year statute of limitations, which began to run from the date of the alleged wrong, rather than the date of the discovery of the wrong.  *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d at 1039 (applying Section 29(b)'s statute of limitations to a claim for violations under the "almost identical" Investment Advisers Act and holding the statute began to run on the date the agreement was signed).  Here, the statute began to run on September 20, 2018 and Plaintiff did not file this claim until December 31, 2021.  (FAC ¶ 2 n.4; *id.* Ex. 1 at 2,

25; Dkt. No. 1.)  Having failed to file within three years of the date of execution, Plaintiff's claims are time-barred.  *See Hottinger v. Amcoal Energy Corp.*, 1992 WL 349851, at *6 (S.D.N.Y. Nov. 10, 1992) (holding plaintiff's claim barred after three years from the "execution of a promissory note and accompanying investment documents"); *Kahn*, 970 F.2d at 1040.

Even if Plaintiff could get around this unequivocal bar, DPLS's claims are also barred by the one-year statute of limitations.  To determine when this statute began to run, courts look at when "plaintiff learns of the critical facts that he has been hurt and who has inflicted the injury." *JD Anderson v. Binance*, 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022).  Plaintiff admits that it could have easily discovered the facts underlying Counts I–III—*i.e.*, FirstFire's registrations status—at the time of the execution of the 2018 Note.  (Dkt. No. 28 at 2 ("[I]t may have been easy to discover FirstFire's registration status . . . .").)  DPLS claims that the execution of the 2018 Note constituted an unlawful purchase of a security (FAC ¶ 95), meaning that its execution would be the first alleged "sale or purchase involve[ing] [a] violation," 15 U.S.C. § 78cc.  However, even if the first conversion is the relevant transaction, this case is time-barred as of June 7, 2020, more than a year before DPLS filed this action.  (FAC ¶ 32.)  DPLS through the exercise of "reasonable diligence" could have discovered the alleged violation in September of 2018 and failed to file its claim within one year.

### D.       The Notes Did Not Involve a Prohibited Transaction.

DPLS contends that the Notes should be rescinded because it claims that FirstFire was acting an unregistered securities dealer.  (*E.g.*, FAC ¶¶ 99, 109.)  This argument is unavailing.  To establish a violation of Section 29(b), Plaintiff must show that "(1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect."  *EMA Fin., LLC v. Vystar Corp., Inc.*, 2021 WL 1177801, at *2 (Mar. 29, 2021).  "[O]nly unlawful contracts may be rescinded, not unlawful

transactions made pursuant to lawful contracts."  *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981).  As neither Note required FirstFire to act as a "dealer," DPLS's Section 29(b) claims fail.

Accordingly, in denying Plaintiff's motion for a preliminary injunction the Court held that DPLS was unlikely to succeed on the merits of these claims as its "theory that the April 2021 note is invalid under section 29(b) of the Securities Exchange Act because FirstFire was acting as an unregistered broker dealer has already been rejected by two courts in this district."  (Tr. at 45:6–15 (citing *LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160, at *5 (S.D.N.Y. Sept. 28, 2018), and *EMA Fin., LLC v. Vystar Corp., Inc.*, 2021 WL 1177801, at *2 (Mar. 29, 2021), *reconsideration denied*, 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021))); *see also EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020); *Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019); *Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *4–5 (S.D.N.Y. Aug. 7, 2014); *Frati v. Saltzstein*, 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011).  While the motion for a preliminary injunction only involved the 2021 Note, the Court's reasoning and this Circuit's precedent apply with equal force to the 2018 Note, which also did not require FirstFire to act as an unregistered broker-dealer. (FAC Ex. 1.)  Counts I–II should be dismissed as Plaintiff has repeatedly failed to cite any case law in this circuit that support its Section 29(b) claims.[7]

## E.    FirstFire Is Not a Dealer Within the Meaning of the Exchange Act.

Even if DPLS's claims could survive this first hurdle, FirstFire does not remotely meet the definition of a "dealer" within the Exchange Act.  Pursuant to Section 3(a)(5)(A), "[t]he term

---

[7] Plaintiff instead persistently argues this Court should reject these precedents as "wrong" or "incorrectly decided," effectively admitting the case law supports Defendants' position.  (Dkt. No. 22 at 6; Dkt. No. 28 at 3.)  However, DPLS fails to provide any compelling reason to deviate from the overwhelming case law consistently holding the same thing—a Section 29(b) claim cannot lie where the contract is not illegal on its face.

'dealer' means any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A). A "trader" by contrast, for which there is an exception from the definition of dealer, is a party who "buys and sells securities for his or her own account, either individually or in a fiduciary capacity, but not as part of a regular business." S.E.C., Guide to Broker-Dealer Registration (Apr. 2008). An entity may meet the definition of a dealer by, among other things, underwriting or acting as a "market maker" for securities. *Id.*

FirstFire engages in none of these activities and the FAC is devoid of any allegations to the contrary. While DPLS claims that Defendants "sold more than 1 billion newly-issued shares of stock obtained from those notes into the public market," the FAC does not describe even a single stock sale. (FAC ¶ 66.) Rather, the FAC shows that out of $34 million in principal loaned to various issuers, FirstFire converted only $1.4 million or 4% of the total amount loaned. (FAC Ex. 3 at 8.) This is a far cry from "buying and selling securities" as part of its regular business, but rather clearly shows that FirstFire acts as a trader. *Found. Ventures, LLC v. F2G, Ltd.*, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010) ("[T]he record here does not indicate that [defendant] regularly engages in securities transactions."). Rather than FirstFire buying and selling DPLS stock to "make a market," DPLS *hired and paid a registered broker-dealer* to engage FirstFire to enter into the 2021 Note. (Decl. Ex. G, DarkPulse, Inc., Current Report (Form 8-K) (May 5, 2021) at 2.) Moreover, in Section 3.e of the 2021 SPA, DPLS represents and warrants to FirstFire that "so long as any amount on the [2021] Note remains outstanding, the Company shall not to any person, institution, governmental or other entity, state, claim, allege, or in any way assert, that [FirstFire] is currently, or ever has been a broker-dealer under the Securities Exchange Act of

1934." (FAC Ex. 2 at 27.)  FirstFire was not acting as an unregistered dealer in violation of Section 15(a).[8]

### F.    The Complaint Fails to Allege Control Person Liability.

Plaintiff has failed to plead a violation of Section 20(a) against Mr. Fireman.  To state a claim under Section 20(a), a plaintiff must plead "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 244 (S.D.N.Y. 2006).  As an initial matter, DPLS does not specify whether it alleges the primary violation is a Section 29(b) violation or a Section 15(a) violation. (*See* FAC ¶¶ 111–14.)  Either way, Count III must be dismissed as Plaintiff has failed to allege an underlying Exchange Act violation.  *Lapin*, 506 F. Supp. 2d at 245–6; §§ II.A–C, *supra*.

DPLS has furthermore failed to allege that Mr. Fireman controlled the "primary violator." *Lapin*, 506 F. Supp. 2d at 244–5.  DPLS alleges that Mr. Fireman is a managing member of FirstFire Capital Management, LLC, which is a managing member of FirstFire.  (FAC ¶ 23.) DPLS then states conclusorily that Mr. Fireman "possessed and exercised the ultimate decision-making and control over FirstFire" due to his position at FirstFire Capital Management, LLC.  (*Id.* ¶¶ 23, 87.)  Section 20(a) does not extend to "tertiary liability," meaning control over one entity that then allegedly has control over another.  *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004).  Count III must be dismissed.[9]

---

[8] While DPLS brings a separate count (Count II) arguing that the contracts as performed violate federal securities laws, as stated above under Section 29(b), "only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to *lawful* contracts."  *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992).  As the contract is not in violation of federal securities law, the transactions as performed are not either.

[9] DPLS has also failed to plead Mr. Fireman was a "culpable participant" in the primary securities violation.  DPLS has previously argued it does not have to plead scienter for this Section 20(a) violation.  (Dkt. No. 28 at 3.)  However, every provision of the Exchange Act, with one exception not relevant here, "contains a state-of-mind condition

III.    **PLAINTIFF'S RICO CLAIM (COUNT IV) FAILS ON EVERY REQUIRED ELEMENT.**

Despite the splashy rhetoric in the FAC, DPLS fails to allege *any* element of a RICO claim. In enacting RICO, the legislative purpose was to eliminate "the infiltration of organized crime and racketeering into legitimate organizations." *Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001).   Yet in recent years, plaintiffs have attempted to turn "garden variety . . . claims" into civil RICO actions because of "the allure of treble damages, attorney's fees, and federal jurisdiction."  *Rosenson v. Mordowitz*, 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009) (surveying civil RICO cases and finding a success rate of 2%).  As a result, "plaintiffs wielding RICO almost always miss the mark," *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017).  The same is true here.

RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Where, as here, a plaintiff bases its RICO claim on the collection of an unlawful debt, "a plaintiff must allege that (1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the business of lending money . . . at a [usurious] rate, and (3) the usurious rate was at least twice the enforceable rate."  *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018).  The statute further requires that "the 'unlawful debt' be incurred in connection with an illegal 'business.'"  *Wade Park Land Holdings, LLC v. Kalikow*, 2022 WL 657664, at *23 (S.D.N.Y. Mar. 4, 2022).  A plaintiff must also show

---

requiring something more than negligence."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n.28 (1976).  Having failed to allege *any* scienter, Count III additionally fails.

that the alleged unlawful debt was the "proximate cause" of its injury, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2022 WL 480475, at *2 (2d Cir. 2022).  Each required element must be alleged "as to each individual defendant," rather than relying on the "collective activities of the members of the enterprise." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

### G.    Plaintiffs Have Not Alleged a "Person" Distinct from an Enterprise.

While DPLS brings this Count against all Defendants (FAC ¶ 123), an entity cannot be both the alleged "enterprise"[10] and the liable "person."[11]  It is well-settled that "the plain language and purpose of the statute contemplate that a <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of criminality, so a corporate person cannot violate the statute by corrupting itself."  *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (emphasis in original); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).

Here, Plaintiff alleges that FirstFire is the "enterprise" within the meaning of RICO (FAC ¶ 9), and as a result, FirstFire cannot also be the "person" liable under Section 1962(c).  Furthermore, as "[c]orporations can only act through their agents . . . a plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant."  *Lynn v. McCormick*, 760 F. App'x 51, 53 (2d Cir. 2019).  While DPLS provides the Court with the legal conclusion that FirstFire is "an 'enterprise' within the meaning of RICO" (FAC ¶ 118), the FAC alleges the elements of RICO only as to FirstFire, not Mr. Fireman.  (*Id.* ¶¶ 70–86); *Lynn v. McCormick*, 2017 WL 6507112, at *5–6 (S.D.N.Y. Dec. 18, 2017) (holding

---

[10] An "enterprise" is defined as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).
[11] A "person" is defined as "includ[ing] any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

each element of RICO must be alleged as to each defendant), *aff'd*, 760 F. App'x 51 (2d Cir. 2019). Allowing a civil RICO claim to proceed against Mr. Fireman, the only "person" alleged that is a distinct entity from the "enterprise," would permit Plaintiff a backdoor around this distinctness requirement. Count IV against must be dismissed on this basis alone.

###### H.  DPLS Has Not Shown Any "Unlawful Debt."

While a RICO offense "may be predicated on a single instance of collection of an unlawful debt . . . the statute does not reach the collection of a loan that is made occasionally and not as part of the business of lending money at a usurious rate." *Wade Park Land Holdings, LLC*, 2022 WL 657664, at *23. This provision of RICO is aimed at "the evils of loan sharking" and thus excludes "occasional usurious transactions by one not in the business of loan sharking." *Id.* Other than conclusory, non-descript allegations regarding FirstFire's business (FAC ¶¶ 71, 120), DPLS alleges that the Notes constituted collections of unlawful debt under RICO (*id.* ¶ 72). Without any regard to the Notes' choice-of-law provisions, DPLS argues that the Notes constitute the collection of an unlawful debt as they violate New York usury law. (*Id.* ¶¶ 71–74, 77.) This claim fails as New York law does not apply to either Note. DPLS additionally fails to allege that Defendants are engaged in the business of lending money at a usurious rate—at best, DPLS has alleged a legitimate business that engages in "occasional usurious transactions by one not in the business of loan sharking." *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985).

###### (i)  *New York Law Does Not Apply to Either Note.*

DPLS argues that the Notes constitute collections of unlawful debt because they both are governed by and violate New York usury laws. (FAC ¶¶ 74–77.)[12] Neither Note is governed by

---

[12] DPLS cites one case, not from this Court, in support of this proposition. (FAC ¶ 77 & n.18 (citing *Power Up Lending Grp., Ltd. v. Cardinal Energy Group, Inc.*, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019)).) As this Court

New York law.  The 2018 Note is governed by Nevada law (*id.* Ex. 1 at 16) and the 2021 Note is governed by Delaware law (Decl. Ex. F at 1; Part I, *supra*).  Neither of these jurisdictions have usury laws.  *See* Del. Code Ann. tit. 6, §§ 2301(c), 2304(a), 2306; NRS 99.050.  Courts "generally enforce choice-of-law clauses" in line with the well-settled principle that "contracts should be interpreted so as to effectuate the parties' intent."  *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015).  The Notes each additionally include provisions that the laws of these states shall apply "without regard to principles of conflicts of laws."  (FAC Ex. 1 at 16; Decl. Ex. F at 1); *see Ministers & Missionaries*, 26 N.Y.3d at 474 ("New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract . . . .").

New York courts will only disregard these clear choice-of-law provisions upon a showing that:  (1) the chosen state has no reasonable connection to the parties or the contract, (2) the agreement was obtained through fraud, or (3) the chosen state's law violates a fundamental public policy of New York.  *NFusz, Inc.*, 444 F. Supp. 3d at 540.  As explained in Section I.B, *supra*, the 2021 Note's choice-of-law provision was not procured by fraud, the parties have a reasonable relationship to Delaware, and Delaware's law does not violate a fundamental public policy of New York.  While the FAC's allegations regarding the 2018 Note are sparse, DPLS has made no allegation that the 2018 Note was in any way procured by fraud, the parties have in the past met and negotiated in Nevada (FAC ¶ 46),[13] and Nevada law is not violative of a fundamental policy of New York for the same reasons explained in Section I.B, *supra*.  Therefore, nothing supports the Court's application of New York law to the Notes.

_____

stated recently, that case did not involve a borrower "avoiding the laws of its own state of incorporation."  *NFusz, Inc.*, 444 F. Supp. 3d at 541.  Here, DPLS tries to do exactly that.

[13] Multiple promissory notes that DPLS entered into around this time had a Nevada choice-of-law clause.  (Decl. Ex. C, DarkPulse, Inc., Form 10-K Ex. 99.5 at 10; *id.* Ex. 10.2 at 16; *id.* Ex. 4.1 at 9.)

In addition, DPLS has alleged *no* connection to the State of New York and yet attempts to invoke the protection of its usury laws.  In evaluating whether a state has a reasonable relationship to the parties or a transaction, courts look at "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties."  *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.S.2d 309, 317 (1994).  The FAC is bare of allegations of the "places of negotiation and performance," outside of alleging that the Amendment was negotiated in Nevada.  (FAC ¶ 46.)  As to the domicile of the parties, this too works against DPLS.  At the time of the execution of the 2018 Note, DPLS was incorporated in Delaware and headquartered in Virginia.  (FAC ¶ 17 n.8; *id.* Ex. 1 at 15, 25.)[14]  While DPLS now alleges that its principal place of business is in New York (*id.* ¶ 17), it announced that, as of March 1, 2022, its "national headquarters" is located in Houston, Texas.  (Decl. Ex. H, DarkPulse, Inc., Current Report (Form 8-K) (Feb. 7, 2022) at 2); *cf. Hertz Corp. v. Friend*, 559 U.S. 77, 81, 92 (2010) (holding a corporation's principal place of business is the corporation's "nerve center," which will "typically be found at a corporation's headquarters").  In between Virginia and Texas, despite the New York addresses listed on its filings with the SEC[15] (which appear to be either temporary or solely mailing addresses),[16] DPLS listed no major lease or headquarters in the United

---

[14] Should the Court determine that Nevada does not have a reasonable relationship to the 2018 Note, Delaware law should apply as both parties are incorporated there.  Even if Virginia law applied, where DPLS was headquartered at the time, Virginia does not have usury laws for corporations.  Va. Code Ann. § 6.2-308 (2010).

[15] The Supreme Court in *Hertz Corp.* explicitly rejected "that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center'" as "[s]uch possibilities would readily permit jurisdictional manipulation."  559 U.S. at 97.

[16] DPLS first reported a New York address in its SEC filings on November 19, 2018, as "350 5th Avenue, 59th Floor."  (Decl. Ex. M, DarkPulse, Inc., Amended Current Report (Form 8-K/A) (Nov. 19, 2018) at 1.)  In its Form 10-K filed on June 8, 2020, DPLS listed its address as "225 West 34th Street, 9th Floor."  (Decl. Ex. N, DarkPulse, Inc., Form 10-K (June 8, 2020) at 1.)  A few months later, DPLS's address was reported as "1345 Avenue of the Americas, 2nd Floor," an address which it still claims today.  (Decl. Ex. O, DarkPulse, Inc., Form 10-Q (Nov. 13, 2020) at 1.)  Each of these addresses belongs to Virgo Business Centers, which, according to its website, provides "shared office space, coworking space and meeting rooms."  Virgo Business Centers, https://www.virgobc.com/midtown/ (last visited May 26, 2022) (listing address at "1345 Avenue of the Americas 2nd and 33rd Floors"); *see also* Summons ¶¶ 10–11, *Virgo Penn Business Centers LLC v. Williamsport Holdings LLC*, 2020 WL 5576690 (N.Y. Sup. Ct. Sept. 16, 2020) (listing

States other than a manufacturing and engineering facility in Tempe, Arizona beginning in April 2021.[17]  (Decl. Ex. I, DarkPulse, Inc., Current Report (Form 8-K) (Feb. 8, 2021).)  While DPLS is authorized to do business in Texas (Decl. Ex. J at 1) and filed a name reservation for "DarkPulse" in February 2021, listing an address in Scottsdale, Arizona (Decl. Ex. K at 1), there is no record of DPLS having ever applied or been registered to do business in New York (Decl. Ex. L).  DPLS, without any tie to New York, attempts to "avoid[] the laws of its own state of incorporation," and instead achieve a windfall due to the laws of a state in which it is not headquartered and is not registered to conduct business.  *NFusz, Inc.*, 444 F. Supp. 3d at 541.[18]

(ii) *Even if New York Law Applies, DPLS's Claim Fails.*

Even assuming New York law applies, the Notes are not usurious.  As DPLS acknowledges, both Notes state interest rates on their face well below New York's criminal usury rate.  (FAC ¶ 79.)  To calculate the interest rate, DPLS added the stated interest rates, the original issue discounts, and the "conversion discount rates."  (*Id.* ¶ 79 nn.20–21.)  As to the 2018 Note, even assuming *arguendo* that DPLS's method of calculating interest is correct, the interest rate is less than twice the maximum rate of 25% and is not an "unlawful debt" under RICO.[19]  (FAC ¶ 77); *Dae Hyuk Kwon*, 742 F. App'x at 539.

As to the 2021 Note, DPLS incorrectly includes the fixed default discount and the so-called "commitment shares" in its calculation of the interest rate and fails to allege usurious intent.  The

---

the address for Virgo Business Centers' "temporary . . . mail delivery . . . [and] co-working space" as "the 9th Floor of 225 West 34th Street").

[17] Arizona law additionally permits parties to contract for any rate of interest without violating usury laws.  A.R.S. § 44-1201(A).

[18] Furthermore, DPLS's argument leads to absurd results:  if New York usury law applies to every contract alleged to charge a usurious rate, regardless of a contract's choice-of-law provision, then New York's usury law through RICO is now federal usury law.  This would permit DPLS to recover treble damages on the 20 promissory notes it has executed over the last few years, an unwarranted windfall to an entity well-versed in the terms of such agreements.

[19] Despite acknowledging the 2018 Note contained a "discount of . . . 30% to market," (FAC ¶ 75), DPLS inexplicably applies a "43% conversion discount rate" to calculate an "annualized interest rate" of 61% (*id.* ¶ 79 n.21).  Perhaps because when 30% is added to the 8% stated discount rate and the 10% original issue discount, the rate is below twice the New York usury rate.

21

defense of usury does not apply where the terms of a note impose a rate of interest "in excess of the statutory maximum *only after default*." *Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*, 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017) (collecting cases); *see also 1077 Madison Street, LLC v. Daniels*, 954 F.3d 460, 465 (2d Cir. 2020).  Thus the "conversion discount" DPLS used in its interest calculation for the 2021 Note is flawed—the conversion price without DPLS's default would have been $0.015 per share.  (FAC Ex. 2 at 4.)  This was the average trading price for the week prior to the 2021 Note's execution, meaning that FirstFire bore significant market risk and could expect at most, a very small profit if not a loss from the conversion of the Note.  In the case DPLS repeatedly relies on, *Adar Bays*, the Court of Appeals distinguished between fixed-discount conversion and fixed-price conversions, holding that fixed-price conversion options do "not render the loan usurious on its face" and the analysis instead depends on "usurious intent," which DPLS fails to allege.  *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 338 (2021).  Finally, the "commitment shares" were not interest on the loan, but rather an added inducement to convince FirstFire to advance the principal amount.  *Chassman v. Shipley*, 695 F. App'x 630, 633 (2d Cir. 2017) (holding where warrants were given to induce the lender they were not "a deposit on the yet unaccrued interest on the loan").  Thus, the Notes do not charge interest at twice the legal rate in New York, and DPLS's RICO claim fails.

Additionally, both Notes have already been converted, thus a usury defense no longer applies.  *Union Cap. LLC v. Vape Holdings Inc.*, 2017 WL 1406278, at *5 (S.D.N.Y. Mar. 31 2017) ("[N]otes with stock conversion provisions likely have the character of an equity investment, and thus are no longer vulnerable to a usury defense once converted."); *Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*, 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017) (same).  Thus, the Notes are no longer loans or subject to New York's usury laws.

(iii)    *Plaintiff Fails to Allege FirstFire Is in the Business of Lending at Usurious Rates.*

While DPLS fails to allege any collection of an "unlawful debt," its RICO claim also fails because the FAC fails to properly plead that FirstFire is in the business of lending at a usurious rate.  DPLS makes the conclusory assertion that FirstFire "has made loans to other issuers that also violate New York's usury laws" based on "information and belief."  (FAC ¶ 71); *see also Cellucci v. O'Leary*, 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory and pertain to facts [that] are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.").[20]  While DPLS appears aware of the publicly available information regarding other transactions FirstFire has entered into (FAC Ex. 3), DPLS's bare, unsupported assertion does not properly plead that FirstFire and Mr. Fireman are engaged in the business of lending money at double the legal rate under the applicable law. *Durante Bros. & Sons, Inc.*, 755 F.2d at 250; *Contract Transport Servs., Inc. v. New Era Lending LLC*, 2018 WL 11226077, at *6 (S.D.N.Y. Oct. 26, 2018) (dismissing RICO claim with prejudice for "fail[ing] to specify any other individuals or companies to whom Defendants have lent money or the usurious interest rates attached to any other loans made by Defendants").  That is because it cannot.  (*See, e.g.*, Decl. Ex. P, Visium Technologies, Inc., Current Report (Form 8-K) (Jan. 16, 2019), Ex. 10.2 at 21 (governing law is Nevada).)[21]

---

[20] The FAC contains the unsupported allegation that Mr. Fireman "personally negotiated the terms of the convertible notes that FirstFire purchased from microcap companies" and "was and remains the sole person with the power to direct, authorize, and compel FirstFire to enter into, convert, and subsequently sell securities through usurious convertible notes with issuers."  (FAC ¶¶ 88–89.)

[21] DPLS has additionally failed to allege any injury that is a proximate cause of FirstFire's or Mr. Fireman's actions. "FirstFire owns a very small percentage of [DPLS] stock, approximately 5 percent" (Tr. at 46:14–17) and so the assertion that its conversions or sales of stock, especially when DPLS has a massive amount of shares outstanding, made DPLS "unable to privately raise money from other entities" (FAC ¶ 84) is unsupported.  *Petroff Amshen LLP*, 2022 WL 480475, at *2.  DPLS additionally warns its stockholders of dilution due to the GHS Agreements in its filings, not the Notes.  (Decl. Ex. A at 14.)

## IV.   PLAINTIFF'S STATE LAW CLAIMS (COUNTS V-VI) MUST BE DISMISSED.

Because DPLS fails to state a single federal claim, "the only remaining basis for this Court's subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a)." *Frati v. Salztein*, 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011). However, the parties are not diverse as both are incorporated in Delaware. (FAC ¶¶ 17, 19.) Thus, the Court lacks subject matter jurisdiction over DPLS's remaining state law claims.[22]

DPLS's state law claims also fail on the merits. Equitable and tort claims are "extra-contractual" and so the Court must conduct a choice-of-law analysis to determine what law applies. *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). As to DPLS's claim for unjust enrichment, there is no "actual conflict" between the laws of New York and Delaware. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co. Inc.*, 449 F.3d 377, 382, 384 (2d Cir. 2006) (holding the "first step" in a choice-of-law analysis is "to determine whether there is an actual conflict between the laws of the jurisdictions involved" and this analysis of "jurisdictions involved" relies "almost exclusively" on "the parties' domiciles and the locus of the tort"); *FCX Solar, LLC v. FTC Solar, Inc.*, 2022 WL 355606, at *7–8 (S.D.N.Y. Feb. 7, 2022) (holding, as between New York and Delaware law, "[t]here is no material difference between common law unjust enrichment claims").

Count V must be dismissed as, under both New York and Delaware law, where a contract governs the parties' relationship, a party may not bring a claim for unjust enrichment. *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) ("If a contract comprehensively governs the parties' relationship, then it alone must

---

[22] The Court should decline to exercise supplemental jurisdiction over DPLS's state law claims. *Sadallah v. City of Utica*, 2004 WL 1949416, at *39 (2d Cir. Sept. 3, 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court."); *Acklin v. Eichner*, 2021 WL 4442819, at *8 (S.D.N.Y. Sept. 27, 2021) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied.");

*Sabre Int'l Sec., Ltd. v. Vulcan Cap. Mgmt., Inc.*, 95 A.D.3d 434, 438 (N.Y. App. Div. 2012)

(same); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) (same);

*Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006)

(same).  DPLS's claim is based on FirstFire's alleged unjust enrichment through the conversions

pursuant to the Notes (FAC ¶ 125)—thus, Count V is barred under New York and Delaware law.

As to Count VI, the law of the state of incorporation applies where plaintiff requests a

constructive trust be imposed on shares of a corporation, which here is Delaware.  *Moses v. Apple*

*Hospitality Reit Inc.*, 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015).  For the same reasons

Count V fails to state a claim, Count VI fails as a constructive trust is an equitable remedy imposed

"when a defendant's fraudulent, unfair or unconscionable conduct causes them to be unjustly

enriched at the expense of another to whom he owed some duty."  *Metro Ambulance, Inc. v.*

*Eastern Medical Billing, Inc.*, 1995 WL 409015, at *4 (Del. Ch. July 5, 1995).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully move this Court to dismiss the First

Amended Complaint with prejudice.


Dated:  May 26, 2022                                     */s/ Aaron H. Marks*

                                                                    Aaron H. Marks, P.C.
                                                                    Byron Pacheco
                                                                    Julia D. Harper
                                                                    KIRKLAND & ELLIS LLP
                                                                    601 Lexington Avenue
                                                                    New York, New York 10022
                                                                    (212) 446-4800

                                                                    *Attorneys for Defendants*