UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARKPULSE, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC and ELI FIREMAN<br><br>            Defendants. | Index No. 1:21-cv-11222 (ER) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

<u>Page</u>

ARGUMENT ........................................................................................................................ 1

I.     DPLS'S USURY ARGUMENTS ARE IRRELEVANT AS TO THE 2021 NOTE'S FORUM-SELECTION CLAUSE ...................................................... 1

II.    DPLS'S EXCHANGE ACT CLAIMS (COUNTS I–III) MUST BE DISMISSED ........................................................................................................ 2

        A.    The One-/Three-Year Statute of Limitations Applies to DPLS's Section 29(b) Claims ................................................................................................ 2

        B.    DPLS's Section 29(b) Claim Is Time-Barred as to the 2018 Note ............ 3

        C.    The Notes Did Not Involve a Prohibited Transaction ................................ 5

        D.    FirstFire Is Not a Dealer ............................................................................ 7

III.   PLAINTIFF'S RICO ALLEGATIONS FAIL TO STATE A CLAIM .................. 8

        A.    Count IV Must Be Dismissed Against Both Defendants ........................... 8

        B.    DPLS Fails to Allege Any Unlawful Debt as New York Law Does Not Apply ........................................................................................................ 8

        C.    DPLS Fails to Allege FirstFire Is Engaged in Unlawful Debt Collection ... 10

IV.   PLAINTIFF'S STATE LAW CLAIMS (COUNTS V–VI) MUST BE DISMISSED ...................................................................................................... 10

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alpha Cap. Anstalt v. Oxysure Sys., Inc.*,
    216 F. Supp. 3d 403 (S.D.N.Y. 2016)...................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................7

*Bennett v. U.S. Tr. Co. of New York*,
    770 F.2d 308 (2d Cir. 1985)....................................................................................................6

*Busher v. Barry*,
    2019 U.S. Dist. LEXIS 172754 (S.D.N.Y. 2019)...................................................................4

*Celsion Corp. v. Stearns Mgmt. Corp.*,
    157 F. Supp. 2d 942 (N.D. Ill. 2001) ......................................................................................3

*EMA Fin., LLC v. NFusz, Inc.*,
    444 F. Supp. 3d 530 (S.D.N.Y. 2020)....................................................................................9

*EMA Fin., LLC v. NFusz, Inc.*,
    509 F. Supp. 3d 18 (S.D.N.Y. 2020)......................................................................................7

*Found. Ventures, LLC v. F2G, LTD.*,
    2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010) ........................................................................5

*Ingenito v. Bermec Corp.*,
    376 F. Supp. 1154 (S.D.N.Y. 1974).......................................................................................5

*JD Anderson v. Binance*,
    2022 WL 976824 (Mar. 31, 2022) .....................................................................................2, 3

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
    970 F.2d 1030 (2d Cir. 1992)..................................................................................................4

*Kao v. Brit. Airways, PLC*,
    2018 WL 501609 (S.D.N.Y. Jan. 19, 2018) ..........................................................................7

*Lawrence v. Richman Grp. of Conn., LLC*,
    407 F. Supp. 2d 385 (D. Conn. 2005)....................................................................................2

*LG Cap. Funding, LLC v. ExeLED Holdings Inc.*,
    Case No. 1:17-cv-04006-LJL-OTW (S.D.N.Y. July 10, 2017)...............................................5

*Madden v. Midland Funding, LLC*,
    237 F. Supp. 3d 130 (S.D.N.Y. 2017)....................................................................................9

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) .................................................................................................... 6

*Mills v. Elec. Auto-Lite Co.*,
    552 F.2d 1239 (7th Cir. 1977) ...................................................................................... 6

*Pearlstein v. Scudder & German*,
    429 F.2d 1136 (2d Cir. 1970) ....................................................................................... 6

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
    2022 WL 426199 (S.D.N.Y. Feb. 11, 2022) ................................................................ 9

*RMP Cap. Corp. v. Bam Brokerage, Inc.*,
    21 F. Supp. 3d 173 (E.D.N.Y. 2014) ............................................................................ 9

*SEC v. Almagarby*,
    479 F. Supp. 3d 1266 (S.D. Fla. 2020) ......................................................................... 4

*Sup. Funding Corp. v. Big Apple Cap. Corp.*,
    738 F. Supp. 1468 (S.D.N.Y. 1990) ............................................................................. 9

*U1it4less, Inc. v. Fedex Corp.*,
    871 F.3d 199 (2d Cir. 2017) ......................................................................................... 8

*UFCW Local 1500 Pension Fund v. Mayer*,
    2016 U.S. Dist. LEXIS 145091 (N.D. Cal. 2016) ........................................................ 5

*United States v. Moseley*,
    980 F.3d 9 (2d Cir. 2020) ......................................................................................... 8, 9

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019) ........................................................................................... 5

*Walter E. Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*,
    587 F. Supp. 557 (S.D.N.Y. 1982) ............................................................................... 9

*Weiss v. Altholtz*,
    2011 WL 4538459 (N.D. Ill. Sept. 29, 2011) ............................................................... 3

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
    84 N.Y.2d 309 (1994) ................................................................................................... 9

**Rules**

Rule 12(b)(6) ......................................................................................................................... 1

DPLS's Opposition to FirstFire's motion to dismiss confirms, many times over, that DPLS's claims are meritless and that its First Amended Complaint should be dismissed in its entirety.[1] Indeed, all of the problems the Court identified when it denied DPLS's request for an injunction in January 2022 persist today and are fatal to DPLS's ability to state any claim under Rule 12(b)(6), and DPLS's effort to add RICO claims in its amendment plainly fails.

*First*, this case was brought in the wrong forum, and DPLS has no viable argument to the contrary, as usury cannot be applied affirmatively to undermine an exclusive forum provision. *Second*, DPLS's unregistered dealer claims are not only meritless, but also time-barred as to the 2018 Note, and any "discovery rule" or "continuing violation" exceptions plainly do not apply. *Third*, DPLS's civil RICO claim is conclusory, self-contradictory, and lacking as to every element. *Fourth*, DPLS fails to plead the necessary elements for its state law claims, and its only excuse for this failure—that supposedly there is no valid underlying contract—is belied by its own allegations and authorities. The Court should dismiss DPLS's First Amended Complaint in its entirety.

## ARGUMENT

**I.   DPLS'S USURY ARGUMENTS ARE IRRELEVANT AS TO THE 2021 NOTE'S FORUM-SELECTION CLAUSE.**

With no supporting authority, DPLS insists its usury arguments render the Amendment and its choice-of-law and -forum provisions unenforceable. (Opp. at 6.) Yet DPLS ignores that: (i) the Amendment was dated effective April 26, 2021, the date of the 2021 Note, meaning the parties agreed *as of* April 26, 2021, the 2021 SPA and Note were governed by Delaware law and included a Delaware choice-of-forum clause (Decl. Ex. F at 2); and (ii) usury under New York law is only a *defense* in an action to recover on a debt, which this action, brought *affirmatively* by DPLS, is

---

[1] All terms not defined herein take their meaning from Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("MTD"). "Decl." refers to the Declaration of Aaron Marks submitted herewith. Unless otherwise specified, all emphasis has been added and internal quotations and citations omitted.

not (MTD at 9–10). DPLS's sole response is that the 2021 Note and SPA are "void *ab initio*" and are "based on a promise for breach of which law neither gives a remedy nor otherwise recognizes any duty of performance by the promisor." (Opp. at 10 n.11.) Even assuming DPLS is correct in its assertions regarding usury law (which it is not), this is *not* an action where FirstFire is seeking a remedy on the 2021 Note, nor one where DPLS is being asked to perform. As made clear in Defendants' opening brief, DPLS's usury arguments bear no relevance to the enforceability of the 2021 Note's forum-selection clause under the relevant framework. (MTD at 7–10.)

## II.  DPLS'S EXCHANGE ACT CLAIMS (COUNTS I–III) MUST BE DISMISSED.

### A.  The One-/Three-Year Statute of Limitations Applies to DPLS's Section 29(b) Claims.

Rather than the one-/three-year statute of limitations, DPLS contends that a "two-year/five-year" limitations period for securities fraud claims should apply to its Section 29(b) claim. (Opp. at 19.) That is not the law. Although Section 29(b) does not set out a specific statutory limitations period, the Supreme Court instructs that the applicable limitations period should be determined from the most analogous federal statute. Accordingly, courts in this Circuit and elsewhere have routinely held that the one-/three-year statutory periods apply to Section 29(b) claims arising from Section 15(a) violations.[2] *See, e.g.*, *JD Anderson v. Binance*, 2022 WL 976824, at *3 (Mar. 31, 2022) (holding one-year limitations period with discovery rule applied to Section 29(b) claim based on defendant acting as unregistered exchange); *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) (holding Section 29(b) affirmative defense based on alleged Section 15(a) claim was time-barred one year after "individual could have, through the exercise of

---

[2] The sole case DPLS cites for the proposition that the one-year/three-year limit does not apply to Section 15(a) cases is *Lawrence v. Richman Grp. of Conn., LLC*, 407 F. Supp. 2d 385 (D. Conn. 2005). However, in that case, the court held that the statute of limitations did not apply to a Section 29(b) claim when it is raised as an affirmative defense and only applies to "affirmative actions for rescission." *Id.* at 389 n.7.

reasonable diligence, discovered the fraud at issue"); *see also Weiss v. Altholtz*, 2011 WL 4538459, at *2 (N.D. Ill. Sept. 29, 2011) ("The Exchange Act provides a number of express causes of action, and with one exception, all provide the same statute of limitations period: 1 year after discovery and 3 years after the violation."); *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 947 (N.D. Ill. 2001) (holding one-/three-year limitations applies to Section 29(b) where Section 15(a) underlies the claim). DPLS's attempt to apply any other limitations period is baseless.

### B. DPLS's Section 29(b) Claim Is Time-Barred as to the 2018 Note.

DPLS contends that the one-year statute of limitations has not run because "Defendants have consistently maintained—as they do even now—that they are not dealers and therefore are not required to register." (Opp. at 20.) This argument is circular and illogical: because FirstFire refuses to admit to engaging in unlawful securities transactions (which it certainly has not), DPLS claims that it could not have discovered FirstFire's unlawful securities transactions such that the statute of limitations would begin to run. Of course, DPLS resorts to this tautology in order to distract from the relevant legal inquiry—which focuses on when plaintiff DPLS could have discovered, through reasonable diligence, "the critical facts that he has been hurt and who has inflicted the injury." *JD Anderson*, 2022 WL 976824, at *3.

Here, DPLS had all of the "critical facts" regarding its Section 29(b) claim in 2018 that it has today—*i.e.*, that the parties' 2018 Note provided FirstFire with a right of conversion, and FirstFire does not hold itself out as a registered securities dealer. (FAC ¶¶ 26–36.)[3] Indeed, contrary to DPLS's assertions, the First Amended Complaint *does not* allege that FirstFire

---

[3] FirstFire also relies on "EDGAR data," which shows fifty-eight "transactions in securities" DPLS participated in prior to DPLS's execution of the 2018 Note. (FAC ¶ 61; *id.* Ex. 3.) The three transactions that the First Amended Complaint highlights all involved notes that were executed either before or shortly after the 2018 Note. (FAC ¶ 67; *id.* Ex. 3 (showing the DigitalTown, Inc., Ionix Technology, Inc., and Visium Technologies, Inc. notes were executed on July 10, 2018, September 11, 2019, and December 28, 2018, respectively).)

misrepresented itself to make "[DPLS] believe that [FirstFire] was *not* a dealer and thus not required to register as such" (Opp. at 20);[4] ever represented itself as a registered broker or dealer; or claimed that it was not a broker-dealer and not required to register prior to this suit.

Having failed to show that it was unaware of its claim in 2018, DPLS next resorts to the "continuing violation" doctrine, claiming that the statute of limitations does not apply because the underlying conduct was ongoing. (*Id.* at 20–21.) This argument also fails as a matter of law. The continuing violation doctrine does not apply where, as here, the "continuing violation" alleged is the performance of a contract entered into prior to the statute of limitations. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1040 (2d Cir. 1992) ("[O]nce plaintiff has committed itself to the transaction, the claim accrued and thus the statute begins to run.").

DPLS's attempt to distinguish the contract in *Kahn* as "substantially different" is unavailing. (Opp. at 20.) The standard in *Kahn* applies to any "contract calling for subsequent payments," under which there is no "continuing violation" that extends the limitations period if the plaintiff has committed to pay that amount previously. *Kahn*, 970 F.2d at 1040. DPLS seeks to sidestep *Kahn* by claiming that "[e]ach conversion and sale constituted an independent act and inflicted a new and accumulating injury to DarkPulse and its shareholders" (Opp. at 21), but the issue is whether DPLS committed to those subsequent transactions as of September 2018 and had no right to terminate the agreement to avoid them, *Kahn*, 970 F.2d at 1040; (*see also* FAC Ex. 1). There is no question DPLS committed itself to these subsequent transactions under the 2018 Note; thus, there is no "continuing violation" that extends the three-year limitations period.[5]

---

[4] DPLS's reliance on *Busher v. Barry*, 2019 U.S. Dist. LEXIS 172754 (S.D.N.Y. 2019), is misplaced. In *Busher*, a shareholder derivative action alleging breach of fiduciary duty, the court held under New York law that plaintiff had not waived any objection to the company's conduct because plaintiff was a successor-in-interest to a person who had died by the time the company took the action at issue. *Id.* at *18–19.

[5] DPLS's other cases are either inapposite or support Defendants' argument. (Opp. at 20.) First, DPLS relies on a case from the Southern District of Florida, where the court held, in the context of a Section 15(a) claim brought by the S.E.C., that it could consider violations that occurred before the statute of limitations ran. *SEC v. Almagarby*,

### C. The Notes Did Not Involve a Prohibited Transaction.

In Defendants' opening brief, Defendants cited numerous courts in this Circuit that have rejected on the merits Section 29(b) claims virtually identical to DPLS's claim here. (MTD at 13 (collecting cases).) In response, DPLS argues two of the cases, *Vystar* and *ExeLED*, are distinguishable because the Notes did require FirstFire to violate the Exchange Act and the Court in those cases mistakenly "analyzed the contracts as if they were brokerage services contracts instead of *securities contracts*." (Opp. at 16.) Neither theory holds water. First, DPLS argues that because the SPAs obligated FirstFire to purchase the Notes, the SPAs cannot be performed without violating the Exchange Act. (*Id.*) However, obligating FirstFire to purchase the Notes does not "explicitly require" FirstFire to act as a broker. *Found. Ventures, LLC v. F2G, LTD.*, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010). Further, the SPA in *ExeLED* contained language, near-identical to the language in the SPAs DPLS highlights here, which obligated the plaintiff to purchase the Note. (*Compare* Decl. Ex. Q § C.1.a, *LG Cap. Funding, LLC v. ExeLED Holdings Inc.*, Case No. 1:17-cv-04006-LJL-OTW (S.D.N.Y. July 10, 2017), Dkt. No. 26-1 (obligating that "the Company shall issue and sell to the Buyer and the Buyer agrees to purchase from the Company such principal amount of Note as is set forth immediately below the Buyer's name on the signature pages hereto"), *with* Opp. at 16 (same).)

DPLS next turns to an interpretation of Section 29(b) already rejected by this Court,

---

479 F. Supp. 3d 1266, 1271 (S.D. Fla. 2020) ("[A] decision as to whether Defendants acted as dealers will require an evaluation of the totality of Defendants' conduct. Because some of that conduct occurred within the limitations period, the statute of limitations does not bar the SEC's disgorgement claim."). Next, DPLS cites a Northern District of California case where the court held that where the defendant entered into contracts *every year* that allegedly violated the Investment Company Act, the case was distinguishable from cases involving "continuing ill effects of an earlier violation." *UFCW Local 1500 Pension Fund v. Mayer*, 2016 U.S. Dist. LEXIS 145091, at *35 (N.D. Cal. 2016). DPLS's remaining two cases rejected DPLS's argument that where, as here, the alleged "continuing violation" is the performance of a contract, the statute of limitations begins to run from the date of the contract, not its performance. *See Ingenito v. Bermec Corp.*, 376 F. Supp. 1154, 1184 (S.D.N.Y. 1974) ("Each payment [on the promissory note] represented not the creation or assumption of new obligations, but the fulfillment of those previously created."); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("We thus conclude that . . . the prior overt act of entering into the 2006 contract . . . began the running of the statute of limitations . . . .").

5

claiming it is supported U.S. Supreme Court and Second Circuit precedent. (Opp. at 16–17.) However, DPLS's descriptions of *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) and *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970) are plainly incorrect. *Mills* involved a merger where shareholders alleged the proxy was materially false and misleading. 396 U.S. at 378–79. The issue for the Supreme Court was whether plaintiffs had shown that this disclosure violation caused their injury. *Id.* The Supreme Court held that causation is sufficiently shown under Section 14(a) where plaintiffs show the "proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Id.* at 385. But contrary to DPLS's assertion (Opp. at 17), the Court made *no* ruling as to the appropriate remedy. *Id.* at 386 ("Our conclusion that petitioners have established their case . . . implies nothing about the form of relief to which they may be entitled."). In fact, the Court observed that because shareholders were not parties to the merger agreement, they "do not enjoy a statutory right under s 29(b) to set it aside." *Id.* at 388. As the district court eventually awarded monetary damages, *Mills v. Elec. Auto-Lite Co.*, 552 F.2d 1239, 1241 (7th Cir. 1977), the Supreme Court never "affirmed rescission of the merger contract" under Section 29(b), as DPLS claims (Opp. at 17). And DPLS similarly misconstrues *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), which held that plaintiff's claim under Section 7 of the Exchange Act was not barred by two settlement agreements, as those agreements "resulted in a continuation of credit in violation of Regulation T, and under Section 29(b)."[6] *Id.* at 1142. Those agreements, by their terms, obligated "plaintiff [to] pay if defendant extended further credit" and thus were "void" under Section 29(b). *Id.*[7]

---

[6] *Pearlstein* also held that plaintiffs have a private right of action under Section 7, which was later overturned by the Second Circuit in *Bennett v. U.S. Tr. Co. of New York*, 770 F.2d 308, 313 (2d Cir. 1985). It is an open question whether the remainder of *Pearlstein* is still good law.

[7] DPLS's reliance on Fifth Circuit precedent does not save its claims, as this Court already declined to follow

6

### D. FirstFire Is Not a Dealer.

Devoid of factual allegations, the FAC instead makes legal conclusions that FirstFire is a dealer under the Exchange Act. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, DPLS alleges "FirstFire buys securities, converts securities, and sells securities as part of its regular business for its own account" (FAC ¶ 51); "FirstFire acquires large volumes of shares directly from issuers at a substantial discount to market, sells large volumes of shares back into the open market for a substantial profit due to the conversion discount, and does so for its own account and absent investment intent"[8] (*id.*); and "[o]perating as an underwriter is not acting as a trader, but as a securities dealer, which requires registration with the SEC" (*id.* ¶ 62). These legal conclusions cannot support DPLS's claims. DPLS also points to FirstFire's conversion of the 2018 Note, over three years, as evidence that FirstFire "quickly resells the stock" from conversions to obtain the underwriting spread. (*Id.* ¶¶ 35, 36; Opp. at 21.) This only shows the slow conversion of the 2018 Note over *years*, not the "quick" conversion and stock sale DPLS claims. FirstFire was not acting as a dealer, no specific allegations are to the contrary, and Counts I–III must be dismissed.[9]

---

it in assessing Section 29(b) claims. *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020) ("NFusz's reliance on Fifth Circuit precedents, which are not binding on this Court, is of no assistance to NFusz.").

[8]    Both SPAs contain a warranty from FirstFire stating FirstFire "is purchasing the Note and the shares of Common Stock issuable upon conversion . . . for its own account and not with a present view towards the public sale or distribution thereof." (FAC Ex. 1 at 25–26; *id.* Ex. 2 at 23.)

[9]    DPLS makes no mention in its opposition of Defendants' arguments to dismiss Count III. Having failed to oppose Defendants' argument, DPLS has waived that issue. *See Kao v. Brit. Airways, PLC*, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018). Count III must be dismissed.

### III. PLAINTIFF'S RICO ALLEGATIONS FAIL TO STATE A CLAIM.

#### A. Count IV Must Be Dismissed Against Both Defendants.

DPLS's effort to state a RICO claim is wholly futile. As a threshold matter, DPLS concedes that Count IV must be dismissed against FirstFire when it acknowledged that Mr. Fireman is alleged to be the RICO "person" and FirstFire the RICO "enterprise." (Opp. at 22.) It is well established that "the same entity cannot be both the RICO person and the enterprise" and only the "RICO person" may be held liable. *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017). Accordingly, based on DPLS's own allegations, there can be no claim against FirstFire.

DPLS also fails to state a claim as to Mr. Fireman, as the FAC contains no allegations that Fireman engaged in *any* supposedly unlawful conduct. The only such allegations are against FirstFire (against whom DPLS cannot state a claim). For example, DPLS alleges FirstFire, not Mr. Fireman, engaged "in the business of making usurious loans" and "collected an unlawful debt from" DPLS. (FAC ¶¶ 12, 72.) DPLS fails to plead a cognizable RICO claim against Mr. Fireman.

#### B. DPLS Fails to Allege Any Unlawful Debt as New York Law Does Not Apply.

New York law does not apply to either Note. As to the 2021 Note, DPLS relies on its allegations that a void contract "cannot be amended" regardless of the parties' agreement as to the Amendment's effective date or that the choice-of-law provision is presumptively enforceable and does not violate any fundamental policy of New York. (Section I.B, *supra*; MTD at 18–21.)

As to the 2018 Note, DPLS argues the Court should disregard the choice-of-law provision in favor of New York's usury law, because Nevada's law violates a fundamental policy of New York and the parties have "the most significant relationship" with New York. (Opp. at 11–12.) *First*, applying Nevada law does not violate a fundamental policy of New York in this case. DPLS misleadingly quotes from *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020), yet asks this Court to ignore that case's instruction. (Opp. at 13.) There, the Second Circuit noted that "when courts

8

determine whether New York would enforce choice-of-law provisions set out in a contract, corporations conducting their business transactions should be treated differently from individual consumers seeking personal credit" and affirmed the line of cases in this Circuit that rejected applying the public policy exception to choice-of-law provisions between two corporations. *Id.* at 22 (citing approvingly *Walter E. Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*, 587 F. Supp. 557, 560 (S.D.N.Y. 1982); *RMP Cap. Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 186 (E.D.N.Y. 2014); *Sup. Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1471 (S.D.N.Y. 1990)). The court in *Moseley* distinguished *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 149–50 (S.D.N.Y. 2017), on which DPLS relies (Opp. at 11–12),[10] as that case involved "individual consumers seeking personal credit." *Moseley*, 980 F.3d at 22. Thus, applying the corporate parties' chosen law to the Notes does not violate a fundamental policy of New York.

*Second*, DPLS fails to show Nevada has no reasonable relationship to the 2018 Note. DPLS misstates the test, which is whether the state has "*no* reasonable relationship"—*not* "the most significant relationship"—with the parties or transaction. *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020). The 2018 Note's only connection to New York is that FirstFire is headquartered there. (FAC ¶ 19.) DPLS infers, unsupported by the FAC, that "FirstFire also negotiated, entered into, and performed the September 2018 Note from New York." (Opp. at 12.) DPLS also claims it "suffered all harm under the" 2018 Note while headquartered in New York, but this is irrelevant. *See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994). DPLS notes the parties' incorporation in Delaware (FAC ¶¶ 17, 19) and that the Amendment was negotiated in Nevada (*id.* ¶ 46) yet fails to show either state—which

---

[10] DPLS also cites *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2022 WL 426199, at *8–9 (S.D.N.Y. Feb. 11, 2022), which involved a choice-of-law analysis for a tort claim, an entirely different test that is irrelevant to the contract-based claims here.

have no usury laws—has no reasonable relationship to the Notes.  (MTD at 19–20.)

### C. DPLS Fails to Allege FirstFire Is Engaged in Unlawful Debt Collection.

DPLS's allegation regarding FirstFire's supposed collection of unlawful debts centers on its "Transaction List," yet nowhere does DPLS explain whether these transactions included New York choice-of-law provisions, or why New York usury law applies.  (Opp. at 22.)  DPLS simply asserts that FirstFire engaged in unlawful debt collection "204 times" (*id.* at 23 n.22), showing DPLS's theory of RICO liability relies on New York usury law applying to all promissory notes, regardless of choice-of-law provisions.  (*See* MTD at 21 n.18.)  DPLS's allegations are bolstered only by legal conclusions that "FirstFire is in the business of making usurious loans" (FAC ¶ 72), and that FirstFire "committed multiple related acts of unlawful debt collection from a plethora of other desperate public companies throughout the country" (*id.* ¶ 120).  DPLS fails to allege with specificity that FirstFire is "engaged in the business" of making *usurious* loans.  (MTD at 23.)

### IV. PLAINTIFF'S STATE LAW CLAIMS (COUNTS V–VI) MUST BE DISMISSED.

Attempting to salvage its state law claims, DPLS argues that no valid contract exists.  (Opp. at 24.)  This misses the mark.  For the same reasons DPLS's Section 29(b) claim fails to show that the Notes required FirstFire to violate Section 15(a), DPLS's theory that its unjust enrichment claim survives because the agreements had "unlawful objective[s]" also fails.  (Section II.C, *supra*.)  Nothing in the Notes or SPAs renders them illegal and thus there is no unjust enrichment.

### CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to dismiss the First Amended Complaint with prejudice.

Dated:  June 30, 2022                           /s/ Aaron H. Marks

                                                      Aaron H. Marks, P.C.
                                                     Byron Pacheco
                                                     Julia D. Harper
                                                     KIRKLAND & ELLIS LLP
                                                     601 Lexington Avenue
                                                     New York, New York 10022
                                                     (212) 446-4800

                                                     *Attorneys for Defendants*